# Wytheville.

## CRADDOCK MANUFACTURING COMPANY V.
## Z. A. FAISON, MILTON L. FAISON AND C. RICKS FAISON.

### June 12, 1924.

1. LOGS AND LOGGING—*Trees and Timber—Measurement.*—A deed reserved all timber measuring "eight inches and upward on the stump twelve inches from the ground."

   *Held:* That in cutting the timber down to eight inches in diameter and over across the stump twelve inches from the ground, the measurement should have been *from the outside of the bark* to the *outside of the bark,* not *from the inside of the bark* to the *inside of the bark.*

2. WORDS AND PHRASES—*"Trees, Timber, Lumber, Logs."*—The terms "trees, timber, lumber, logs," etc., are closely related and used interchangeably, but it is equally true that each one has a well defined meaning and there is a wide distinction between the three.

3. WORDS AND PHRASES—*"Timber."*—"Timber" is defined as that sort of wood which is proper for buildings, or for tools, utensils, furniture, carriages, fences, ships, and the like. "The word," says Webster, "is applied to standing trees which are suitable for the uses above mentioned, as when we speak of a forest, it is said to contain excellent timber."

4. DEEDS—*Reservation of Timber—Meaning of Timber.*—Where a deed reserved timber measuring eight inches and upward on the stump twelve inches from the ground, the word "timber," as used in the deed and as used in the common acceptation of the word, means "standing trees," without any reference to the uses to which the same may be put.

5. WORDS AND PHRASES—*"Logs"—"Lumber."*—"Logs" refer to the section or sections of a tree which have been cut or sawed from the trunks after the same has been severed from the stump; while by "lumber" is meant the manufactured product from the logs.

6. WORDS AND PHRASES—*Log Measure—Wood Measure—Lumber Measure.*—Log measure has reference to the measurement of the log and is employed for the purpose of ascertaining the number of feet of lumber which *may* be obtained from the log; while lumber measure means the actual number of feet which *has* been obtained from the sawing of the log; while wood measure means the measurement of the wood exclusive of the bark, that is to say, from inside of bark to inside of bark.

7. TREES AND TIMBER—*Reservation of Timber—Instructions—Case at Bar.*—In the instant case the court instructed the jury that the rule for the measurement of logs, when not specified in the deed, is from inside-bark to inside bark, or the measurement of the wood only, the longest way across.

*Held:* That this instruction was erroneous, because the contract or reservation under consideration had reference to timber or standing trees, while the instruction told the jury they were dealing with the measurement of logs.

8. TREES AND TIMBER—*Reservation of Timber—Instructions—Case at Bar.*—In the instant case the court instructed the jury that the rule for the measurement of logs, when not specified in the deed, is from inside bark to inside bark, or the measurement of the wood only, the longest way across.

*Held:* That this instruction was erroneous, as the rule laid down ignored the view that in the purchase of timber one of the chief elements of value might be the bark. It was also erroneous because it is impracticable to measure a standing tree from "inside bark to inside bark."

9. TREES AND TIMBER—*Measurements.*—The practical way to measure a standing tree, as practiced by timbermen, or woodsmen, is to measure from outside of bark to outside of bark, taking the average diameter. This is usually done by "calipers," or two parallel strips sliding on an inch scale, an apparatus familiar to most timbermen.

10. TREES AND TIMBER—*Sale of Timber—Bark.*—The law is, as it should be, that unless otherwise provided by contract, the purchaser acquires title to all trees of the specified dimensions, including the bark, which he may utilize as he sees fit.

11. USAGES AND CUSTOMS—*Knowledge of Person Testifying to Custom.*—In order to render testimony as to a usage or custom relevant and competent, it must appear that the party testifying to such usage or custom had full knowledge and long experience on the subject upon which he speaks.

12. USAGES AND CUSTOMS—*Question of Law and Fact.*—Whether a custom or usage exists is a question of fact to be determined by the jury under proper instructions from the court.

13. USAGES AND CUSTOMS—*Measurement of Timber—Case at Bar.*—In the instant case plaintiffs' counsel contended that even if an instruction that timber should be measured from inside bark to inside bark was erroneous, yet the error was harmless because plaintiffs relied on proof of a custom of so measuring timber. It did not appear that one witness who testified on the subject had any knowledge or experience such as would enable him to prove the custom, and another witness who testified referred only to the measurement of logs and not to a usage or custom as to the measurement of standing trees.

*Held:* That the evidence did not establish the custom.

Error to a judgment of the Circuit Court of South-ampton county, in an action of trespass on the case. Judgment for plaintiffs. Defendant assigns error.

*Reversed and remanded.*

The opinion states the case.

*James T. Gillette* and *E. P. Buford*, for the plaintiff in error.

*R. E. L. Watkins* and *R. H. Mann*, for the defendants in error.

CAMPBELL, J., delivered the opinion of the court.

This is a case which comes up on a writ of error from the circuit court of Southampton county in a certain action of trespass on the case, in which the defendants in error were plaintiffs and the plaintiff in error and Nestor Kulkki and T. A. Weeks were defendants. No defense was made by Kulkki and Weeks, who were the employees of the plaintiff in error.

For convenience, plaintiff in error will be referred to as defendant, and defendants in error as plaintiffs, those being their respective positions in the court below.

The plaintiffs were the owners of a tract of land containing five hundred and fifty-nine acres, the timber on which had been reserved to one James T. Knight, through whom the defendants acquired title.

The deed from the Peoples Bank of Courtland, Virginia, to the plaintiffs describes the timber reserved as follows: "All the timber reserved that will measure eight inches and upward on the stump twelve inches

from the ground at the time of cutting and over, with the right to the owner of the timber to have ten years. from December 18, 1911, in which to cut and remove the same, with also right of way across the said land, and other necessary logging apparatus to remove the said timber from the said land."

The defendant, under and by virtue of the deed from Knight, entered upon the land described therein, and proceeded to cut about three-fourths of the timber thereon.

On the first May rule, 1921, the plaintiffs instituted an action of trespass on the case against the defendants, alleging, among other things, that the defendants had negligently "and without taking proper precaution to prevent the same, have permitted and suffered the destruction of standing timber measuring under eight inches in diameter and less than twelve inches from the ground, and have, by their negligence, permitted their agents, servants and employees to cut down, remove and destroy certain other timber, etc., to the damage of the said plaintiffs of the sum of five thousand dollars."

The defendant plead the general issue and filed a special plea. Upon the issue joined, the case was duly tried by a jury, which rendered the following verdict: "We, the jury, find for the plaintiffs, and assess damages at $750.00." Upon this verdict judgment was entered by the court.

Several instructions were given by the court, but it is only necessary to notice instruction number one, which was given upon motion of the plaintiffs, over the objection of defendant, and which is as follows:

"(1) The court instructs the jury that the rule for *the measurement* of *logs*, when not specified in the deed, is from inside bark to inside bark, or the *measurement*

*of the wood only, the longest way across,* and if they believe from the evidence that the defendants entered upon plaintiff's land and cut trees less than eight inches in diameter across the stump, measuring from inside bark to inside bark, the longest way across at a point twelve inches from the ground, that the jury shall find for the plaintiffs." (Italics supplied.)

As opposed to the rule laid down by the court in this instruction, as to the measurement of timber, the defendant offered the following instruction, which was refused:

"(1) The court further instructs the jury that in measuring timber trees to be cut by a lumberman, the measurements extend from outside bark to outside bark, and that a deed conveying all of the timber standing and being on a tract of land, measuring eight inches in diameter, twelve inches from the ground at the time of cutting, the measurements shall be from outside bark to outside bark, and that any tree coming up to such measurements belongs to the purchasers of the timber."

The assignments of error are three in number:

1st. That instruction No. 1, as offered by plaintiffs, did not correctly state the law.

2nd. That instruction No. 1, as offered by defendant, should have been given.

3rd. That the verdict of the jury was contrary to the law and the evidence.

[1] The first question for the determination of the court is, the correct measurement of the "timber" cut from the freehold of the plaintiffs by the defendant; that is to say, whether, in cutting the timber down to eight inches in diameter and over across the stump twelve inches from the ground, the measurement should have been, according to the language of the instruc-

tions given and refused, *"from the outside of the bark to the outside of the bark,* or *from the inside of the bark to the inside of the bark."*

It will be borne in mind, in the discussion of the instructions, that each one is dealing with the evidence of the instant case, which shows that measurements were made of the stumps and not of the standing trees or timber.

[2] In dealing with the terms "trees, timber, lumber, logs," etc., both in the evidence and in the instructions, a great deal of confusion has arisen from an indiscriminate and erroneous use of the same. As illustrative of this confusion, the deed under which the defendant claims employs the language "all the timber;" while the language employed in instruction number one given on motion of the plaintiffs is, "The court instructs the jury that the rule for the measurement of *logs,*" etc.

During the progress of the examination of witnesses, questions of this nature were asked: "In cutting *lumber,* you measure from outside to outside?" It is true all of these terms are closely related and used interchangeably, but it is equally true that each one has a well defined meaning and there is a·wide distinction between the three.

[3] Thus "timber" is defined by Webster and other lexicographers as that sort of wood which is proper for buildings, or for tools, utensils, furniture, carriages, fences, ships, and the like. "The word," says Webster, "is applied to standing trees which are suitable for the uses above mentioned, as when we speak of a forest, it is said to contain excellent timber." *Alcutt* v. *Lakin,* 33 N. H. 507, 66 Am. Dec. 741.

[4] As used in the deed in this case and as used in the common acceptation of the word, "timber" means

"standing trees," without any reference to the uses to which the same may be put. Those familiar with timbermen or woodsmen parlance accept this definition as the one in general use.

[5] "Logs" refer to the section or sections of a tree which have been cut or sawed from the trunks after the same has been severed from the stump; while by "lumber" is meant the manufactured product from the logs. ·

[6] Confusion also appears in the use of the terms, "log measure," "lumber measure" and "wood measure." Log measure has reference to the measurement of the log and is employed for the purpose of ascertaining the number of feet of lumber which *may* be obtained from the log; while lumber measure means the actual number of feet which *has* been obtained from the sawing of the log; while wood measure means the measurement of the wood exclusive of the bark, that is to say, from inside of bark to inside of bark.

In disposing of the first assignment of error, we are of the opinion the same is well taken and the instruction complained of should not have been given. The instruction is erroneous for several reasons:

[7] It is based upon a mistaken view of the real issue. The contract or reservation upon which the defendant relies, as heretofore pointed out, has reference to timber or standing trees; while the instruction tells the jurors they are dealing with the measurement of logs.

[8] It is also sought in this instruction to lay down a general rule for the measurement of timber. The rule as thus laid down ignores the view that in the purchase of timber one of the chief elements of value may be the bark. That the bark is of great commercial value is

particularly true in those sections of the Commonwealth where hemlock, chestnut oak, water oak and other species of oaks abound, from which is derived tannin extract, used in the conversion of hides into leather.

It is also erroneous because impracticable. To measure a standing tree from "inside bark to inside bark" would necessitate either removing the bark at the specific height and thus take the risk of being mulcted in damages for killing or injuring the tree, or else by arriving at the diameter or circumference of the tree by means of an estimated thickness of the bark, which is an unfair method because the bark of different species of trees varies as to thickness.

The instruction is wrong because it does not state the correct rule for the measurement of timber, or standing trees.

[9] The practical way to measure a standing tree, as practiced by timbermen, or woodsmen, is to measure from outside of bark to outside of bark, taking the average diameter. This is usually done by "calipers," or two parallel strips sliding on an inch scale, an apparatus familiar to most timbermen. By employing this method, very little, if anything, is left to the imagination.

That this, or a similar method, was employed by the defendant, is shown by the witness Weeks, who, in answer to the question: "Did you use any kind of a measure?" responded, "Yes, we had an iron gauge made."

[10] The law is, as it should be, that unless otherwise provided by contract, the purchaser acquires title to all trees of the specified dimensions, including the bark, which he may utilize as he sees fit.

The main question involved in this case is one of first impression in this jurisdiction.

The only Virginia case which is at all similar is *Craddock Lumber Co.* v. *Jenkins,* 124 Va. 167, 97 S. E. 817. In that case the contract provided *specifically* for *"wood measurement"*—that is, as stated *supra,* from "inside of bark to inside of bark"—and hence the same is not applicable in this case.

The cases of *Heald* v. *Cooper,* 8 Greenl. (Me.) 32, and *Sanderson* v. *Hagan,* 7 Fla. 318, cited in the brief of plaintiffs, do not, in our opinion, sustain their contention. In our investigation of the question under consideration, we have been surprised at the paucity of cases involving the same or a similar question.

In reaching the conclusion, however, that the trial court erred in giving instruction number one for the plaintiffs and in refusing to give instruction number one as offered by the defendant, we are not without authority to sustain the views herein expressed.

In the case of *Hardison* v. *Dennis Simmons Lumber Co.,* 136 N. C. 173, 48 S. E. 588, the plaintiff conveyed "all the pine timber of the above the size of twelve inches in diameter on the stump when cut in and upon" a certain tract of land. Clark, C. J., in delivering the opinion of the court, said: "In determining the measurement, shall the twelve inches be computed from outside of bark to outside of bark or from inside of bark to inside of bark?" As to this proposition the court held: "The natural meaning of the words 'twelve inches in diameter' applied to standing trees, would be measurement from outside to outside, bark included."

In *Alcutt* v. *Lakin,* 33 N. H. 507, 66 Am. Dec. 739, which was an action of "trespass for cutting and carrying away timber," Fowler, J., speaking for the court, said: "The questions only arise upon the exceptions to the ruling of the judge who presided at the trial

**22**

below.   The first is, whether the reservation in a deed of 'all the hemlock, spruce, and birch timber in the wood lot,' on the premises conveyed, includes standing timber trees of those kinds; and the second, whether, if standing trees be thus included, the words of the deed limiting the reservation to trees 'measuring forty-two inches in circumference at the stump' are to be construed as including or excluding the bark upon those trees at the point of admeasurement." After disposing of the first question, the court, upon passing upon the second question, observes: "Nor have we any hesitation in holding that the bark should be included in the admeasurement of forty-two inches at the stump, as specified in the contract.   The bark is an integral and essential portion of the tree, indispensable to its life and growth."

It is contended by counsel for the plaintiffs that even though the instruction complained of is erroneous, yet the error in that respect is harmless, for the reason that plaintiffs rely on the proof of custom in this case to sustain the verdict of the jury.   In this view we are unwilling to concur.

The only evidence on the question of custom is as follows:

Tom Bell, a witness for the plaintiffs, testified:

"Q.   Did you measure the stumps?

"A.   Yes.

"Q.   Did you use a rule?

"A.   Yes.

"Q.   Did you measure from inside to inside?

"A.   Yes.

"Q.   Your custom to measure across stump, inside bark?

"A.   Yes.

"Q.   Is that the general custom?

"A.   Yes; to measure inside to inside bark of log.

*Cross-Examination.*

"Q. Did you say your experience was in cutting or sawing?

"A. My regular business, lumber inspector.

"Q. In cutting lumber, you measure from outside to outside?

"A. Might if allowance is made for that.

"Q. Logs are measured from inside to inside to get the number of feet?

"A. Yes."

T. A. Weeks, a witness for the defendant, testified as to his method of measuring standing trees:

"Q. How did you measure them?

"A. From outside to outside bark.

"Q. Is that your usual method?

"A. Yes.

"Q. How long have you been in the business?

"A. Five years.

"Q. Did you use any kind of a measure?

"A. Yes, we had an iron gauge made."

[11] It is apparent from even a cursory reading of Bell's evidence that neither counsel nor witness had in mind the proof of a custom or usage. Indeed, his answers show he was referring to the method employed by him as a lumber inspector in measuring logs, not a usage or custom as to the measurement of standing trees. As seen, the only evidence on this subject is that of Bell, unless we consider the testimony of Weeks as to his method of measurement. No foundation was laid or attempted to be laid as to Bell, for proving a general custom. In order to render the testimony relevant and competent, it must appear that he has full knowledge and long experience on the subject about which he speaks.

The record fails utterly to disclose that this witness had any such knowledge or experience on the subject as would enable him to prove the custom. *Pettyjohn & Sons* v. *Basham*, 126 Va. 82, 100 S. E. 813.

[12] "Whether a custom or usage exists is a question of fact to be determined by the jury under proper instructions from the court." *Hansbrough* v. *Neal*, 94 Va. 722, 27 S. E. 593.

[13] In this case there being no instructions, either asked for by counsel or given by the court of its own motion, on the question of custom, it is a fair assumption that this view of the matter did not enter into the mind of either court or counsel, during the trial of the case.

As to the second assignment of error, we are of the opinion that instruction number one, as offered by defendant, states the law of the case correctly, and should have been given.

For the errors committed by the trial court in the giving and refusing of the instructions aforesaid, the case must be reversed and remanded for a new trial to be had in conformity with the views herein expressed, and this action renders it unnecessary to pass upon the remaining assignment of error, viz: "that the verdict of the jury was contrary to the law and the evidence."

*Reversed and remanded.*