87 So.2d 852

**STATE of Alabama**

v.

**JOE H. BRADY & ASSOCIATES.**

6 Div. 961.

Supreme Court of Alabama.

April 12, 1956.

Rehearing Denied June 14, 1956.

John Patterson, Atty. Gen., and Willard W. Livingston and Jas. R. Payne, Asst. Attys. Gen., for appellant.

Pritchard, McCall & Jones, Birmingham, for appellees.

MERRILL, Justice.

This is an appeal by the state from a final decree of the Circuit Court of Jefferson County, in Equity, vacating and setting aside a sales tax assessment made by the State Department of Revenue against the appellees.

The sole question for our determination is whether the Alabama sales tax applies to sales by the appellees of McCulloch "power chain saws" to various consumers or users who employ said saws in a manner hereinafter described.

The appellees contend that such sales are exempt from the sales tax by the provisions of Title 51, § 755(p), Code of Alabama, 1940 as amended, which, as pertinent here, reads:

"There are however exempted from the provisions of this article and from the computation of the amount of the tax levied, assessed or payable under this article the following: * * * (p) The gross proceeds of the sale of machines used in mining, quarrying, compounding, processing and manufacturing of tangible personal property; provided that the term 'machines,' as herein used, shall include machinery which is used for mining, quarrying, compounding, processing or manufacturing tangible personal property, and the parts of such machines, attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used."

The appellant contends that the provisions of the above quoted section are not applicable because the chain saws here involved are used for the purpose of obtaining raw material which is subsequently used in manufacturing; that the saws are not used to manufacture anything; and that the users or consumers of the saws are not manufacturers or processors but are "loggers" or "woodsmen".

The appellant concedes that the saws involved are machines, thus the question resolves itself to the issue of whether they are used in "processing" or "manufacturing" as those words are used in Title 51, § 755(p), supra.

The evidence which was heard ore tenus by the judge consisted of the testimony of two witnesses for the appellees. Their testimony reveals that these power chain saws are portable machines which weigh about 25 pounds and are operated by one man. The owner or operator of the saw, who normally is either an independent contractor or an employee of a lumber mill or a paper mill, receives an order for a certain number of logs the lengths of which are usually specified. The number of logs he is able to secure from a single tree depends upon the size of log desired, and, of course, the size of the tree. He may make as many as 15 "cuts" on a tree, exclusive of the "cuts" required to remove the limbs, and thus acquire 14 logs. The logs are then

transported by various means to a lumber mill or paper mill to be made into lumber or paper.

■ In the case of State v. Try-Me Bottling Co., 257 Ala. 128, 57 So.2d 537, 539, this court stated:

"The words manufacturing, processing and compounding are used disjunctively in the statute and are evidently intended to have a broad and all inclusive meaning. There is no attempt in the statute to limit or qualify their meaning. In other words, the three words so used are intended to cover all the operations or processes by which the finished or ultimate product has been integrated from elements originally diverse in their forms."

■ Does the usage of the saws in the manner above outlined constitute an operation or process "by which the finished or ultimate product has been integrated from elements originally diverse in their forms"? We are at the conclusion that it does not. The end product derived from the operation of these saws is logs. Logs are not, in a proper sense, a finished or ultimate product nor a manufactured product. Logs are raw material from which is manufactured the finished or ultimate product, which, in this case, is either lumber or paper.

Black's Law Dictionary, Fourth Edition, page 1092 defines logs as:

"Stems or trunks of trees cut into convenient lengths for the purpose of being afterwards manufactured into lumber of various kinds; not including manufactured lumber of any sort, nor timber which is squared or otherwise shaped for use without further change in form."

A definition substantially the same as the one above quoted is found in 54 C.J.S., Logs and Logging, § 1a:

"A log is the trunk of a tree cut down and stripped of its branches, or the stem or trunk of a tree cut into different lengths for the purpose of being manufactured into timber of various kinds. The word 'logs' does not include trees, manufactured lumber of any kind, or timber which is squared or otherwise shaped for use without further change in form."

In the case of Mitchell v. Page, 107 Me. 388, 78 A. 570, 571, the court in ascertaining the meaning of the word "lumber" as used in a lien statute then under consideration, stated:

"The word 'lumber' in its broadest use includes both the manufactured and the unmanufactured product. We speak of a lumber dealer, meaning a dealer in manufactured lumber, and again of a lumber operator, having reference to the man who cuts, fells, and hauls the trees, and the verb 'to lumber' is usually confined to the latter meaning.

"While, therefore, the term is broad enough in its common acceptance to include the manufactured product as boards, planks, and dimension timber, yet it should be construed in the present statute in the light of the original enactment of 1848, and so construed its meaning is plain. 'Logs, masts, spars, or other lumber,' mean other lumber ejusdem generis, in a condition similar to logs, masts, and spars, that is felled, but not manufactured, whether designed for ultimate manufacture, as are logs, or not to be manufactured, as are spars and masts. Leyndon v. Stanbridge, 2 H. & N. 45."

See also Craddock Mfg. Co. v. Faison, 138 Va. 665, 123 S.E. 535, 536, 39 A.L.R. 1309, where it is said that logs "refer to the section or sections of a tree which have been cut or sawed from the trunks after the same has been severed from the stump; while by 'lumber' is meant the manufactured product from the logs"; Ladnier v. Ingram Day Lumber Co., 135 Miss. 632, 100 So. 369, 370, which approves a definition of logs as " 'the stems or trunks of trees cut into convenient lengths for the purpose of being afterwards manufactured

into lumber of various kinds'"; and Dead River Co. v. Assessors of Houlton, Me., 103 A.2d 123, 129, where it was held that "pulpwood is not 'manufactured lumber' within the meaning of R.S.1944, Chap. 81, Sec. 13, subsec. 1, as amended. Rather does it fall within the meaning of 'logs' as used therein."

We would not be understood as attempting to provide or approve definitions for use in all cases. There is a distinction made in our cases between "logs" and "cordwood" under certain schedules and circumstances. Southern Ry. Co. v. Lowe, 170 Ala. 598, 54 So. 51; Monogram Hardwood Co. v. Louisville & N. R. Co., 6 Ala. App. 629, 60 So. 949. We limit our definitions to their applicability to the instant case and approve what was said by the Supreme Judicial Court of Maine in Dead River Co. v. Assessors of Houlton, supra, as follows:

"Such terms as 'timber', 'logs', 'pulpwood', and 'railroad ties' have no fixed definition in the law. Our examination of the authorities reveals that any one of such terms may have one meaning when used in a lien statute, another when used in a contract made by parties, and still a third when a tax statute is involved. As was said in Bearce v. Dudley, 88 Me. 410, at page 416, 34 A. 260:

" ' "With so many peculiar significations, the intended meaning of the word usually depends upon the connection in which it is used, or the character of the party making use of it,—as, for instance, a ship carpenter would understand something quite different, when he made use of it, from what a cabinet maker, or last maker or a carriage builder would,—and the question is, therefore, not what is the popular meaning as understood by any one class, *but its meaning as used in the statute, and how the legislators have employed it.*" ' "

We do not think the intent of the legislature in enacting the exemption statute under consideration was to include therein all machines used to obtain raw materials. While it is true that raw materials are an essential prerequisite to manufacturing or processing, it does not logically follow that all machines which are used to obtain raw materials are used in manufacturing or processing. To so hold would extend the exemption statute to an extent never intended.

 We are mindful of the well established rule of statutory construction that exemption statutes are to be strictly construed against the taxpayer and in favor of the state. Curry v. Reeves, 240 Ala. 14, 195 So. 428; 18 Alabama Digest Taxation, ☞204(2). We are also mindful of the established principle that a presumption should be indulged in favor of the conclusion of a trial judge who sees and hears the witnesses when the evidence is in conflict. Here, however, as already stated the evidence consisted of the testimony of two witnesses both of whom were called for the appellees. Their admissible testimony was in no respects conflicting, thus no presumption in favor of the findings of the trial court need be indulged. State v. Mobile Stove & Pulley Mfg. Co., 255 Ala. 617, 52 So.2d 693.

 On appeal from the final assessment of sales tax the burden is on the taxpayer to prove its incorrectness as the final assessment is prima facie correct. State v. Mims, 249 Ala. 217, 30 So.2d 673; Title 51, §§ 140, 767, Code of Alabama, 1940. The appellees have not met the burden of proof so imposed.

The decree of the lower court is reversed and one is here rendered for the amount which has been agreed to be due to the State of Alabama if the proceeds from the sale of the saws are not exempt from the sales tax.

Reversed and rendered.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.