100 So.2d 736

**STATE of Alabama**

v.

**BEMIS BRO. BAG COMPANY.**

**7 Div. 332.**

Supreme Court of Alabama.

Oct. 31, 1957.

Rehearing Denied March 6, 1958.

162

John Patterson, Atty. Gen., and Willard W. Livingston, Asst. Atty. Gen., for appellant.

Dixon, Wooten & Boyett, Talladega, for appellee.

**PER CURIAM.**

This case involves the question of whether a sales tax was properly assessed on certain transactions of appellee.

Appellee, Bemis Bro. Bag Company, is a Missouri corporation having branch plants in a number of states, with two plants in Alabama, one at Talladega and the other at Mobile. The Talladega plant is engaged in the manufacture of cotton twine and cotton cloth.

A portion (75%) of the cotton cloth and cotton twine manufactured from raw cotton by the Talladega plant is sold as a finished product to independent manufacturers for further processing and the remaining portion (25%) is shipped by the Talladega plant to other Bemis plants as an unfinished product for further processing into the "end" product of Bemis Bro. Bag Company's overall operation, which is textile bags: that is, they cut the cloth up and make it into textile bags and use the twine in manufacturing the bags.

The cotton twine manufactured at the Talladega plant is wound onto hollow, funnel shaped cones which are made from several thicknesses of heavy paper and are used for the purpose of holding and shipping the twine. Appellee claims that these cones are attachments or parts of machines used in the process of compounding tangible personal property,—that is, the twine. As the twine is produced it is wound on the cones which are packed in cartons for shipment at the Talladega plant, and are unwound by the purchaser as they are used. They are in the nature of a container. State v. Reynolds Metals Co., 263 Ala. 657, 83 So.2d 709. The cones are purchased by the Talladega plant in South Carolina:

the cardboard boxes in Birmingham Alabama, Atlanta Georgia and Chattanooga Tennessee, and the steel straps in Georgia and Illinois.

The cotton cloth manufactured by the Talladega plant is made from raw cotton purchased by said plant. When manufactured, it is rolled into large rolls containing from two hundred and fifty to fifteen hundred yards. These rolls are then packed into burlap or cotton tubing which is pulled over the rolls and tied at both ends with steel wire. The purpose of this is to contain and protect the roll during shipment. The cotton tubing is manufactured by the Talladega plant from cloth and twine made at the Talladega plant from raw cotton purchased by the Talladega plant. This cotton tubing is made from waste yarn. The cotton tubing is used in the same manner and for the same purpose as the burlap tubing involved in this assessment and described above. The burlap tubing is manufactured in the taxpayer's Brooklyn, New York, plant from raw material purchased by the taxpayer's Boston office from India. It is received in the Talladega, Alabama, plant in the form of tubing.

The steel wire used to tie the tubing is purchased in New York by the Talladega plant.

The particular statutes which have application are as follows:

Title 51, section 752(i), as amended, pocket part, Code of 1940:

"(i) The term 'wholesale sale' or 'sale at wholesale' means a sale of tangible personal property by wholesalers to licensed retail merchants, jobbers, dealers, or other wholesalers for resale and does not include a sale by wholesalers to users or consumers, not for resale. The term 'wholesale sale' shall include a sale of tangible personal property or products (including iron ore) to a manufacturer or compounder which enters into and becomes an ingredient or component part of the tangible personal property or products which he manufactures or *compounds for sale, and the furnished container and label thereof*".

Title 51, section 752(f) and (j), as amended, pocket part, Code:

"(f) * * * Said term 'gross proceeds of sale' shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn or used from the business or stock and used or consumed in connection with said business, * * *".

"(j) The term 'sale at retail' or 'retail sale' *shall mean all sales of tangible personal property except those above defined as wholesale sales. The quantities of goods sold or prices at which sold, are immaterial in determining whether or not a sale is at retail.* * * * The term 'sale at retail' or 'retail sale' shall also mean and include the withdrawal, use or consumption of any tangible personal property by anyone who purchases same at wholesale, * * *; and such wholesale purchaser shall report and pay the taxes thereon".

Title 51, section 755(p), as amended, pocket part, Code, is as follows:

"(p) The gross proceeds of the sale of machines used in mining, quarrying, compounding, processing and manufacturing of tangible personal property; provided that the term 'machines,' as herein used, shall include machinery which is used for mining, quarrying, compounding, processing or manufacturing tangible personal property, and the parts of such machines, attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used".

It appears from the evidence that appellee purchased at wholesale certain articles which became an ingredient of certain other articles which are compounded in Talladega by appellee, twenty-five per cent (25%) of which is shipped by appellee to its plants, mostly in other states, for further compounding by appellee into cotton and paper bags as the finished product. Appellant insists that, in doing so, appellee is liable for the tax imposed by the Act of 1947 (No. 305, General Act of 1947, page 160). To the extent that these articles are sold and shipped to others for similar use, appellant does not include them in the assessment.

It is apparent that to make the transaction taxable under section 752(f) and (j), supra, the articles must have been bought by appellee at wholesale as defined above.

It is clear that a sale of products which are to be used by the purchaser as an ingredient or component part of tangible personal property, manufactured or compounded *for sale,* is a wholesale transaction and is not subject to the sales tax as originally drafted. But by the Act of 1947, supra, appended to Title 51, section 752(f) and (j), if such purchaser at wholesale uses the product so purchased as an ingredient or component part of tangible personal property which he manufactures or compounds for his own purposes and not for resale, he must report it to the revenue department of the State and pay the tax provided by the Act of 1947, supra. The case of Cody v. State Tax Comm., 235 Ala. 47, 177 So. 146, related to a transaction which occurred prior to the Act of 1947, supra.

We think the Act of 1947 (No. 305) which requires the purchase to have been at wholesale is sufficiently met in that respect, or it is not inconsistent to say that when the primary transaction was the sale of items not selected and set apart for one purpose or the other by the parties to it and were used principally to become an ingredient of tangible personal property compounded for resale they are bought at wholesale at least for the purpose sought to be accomplished by said Act.

From the foregoing it results that the purchase of raw cotton, cardboard cartons, cones and steel wire may be termed wholesale for the purposes of the Act of 1947, supra, though a part (25%) of the product into which the purchaser (appellee) incorporated them was for its own purpose and not for resale, and therefore twenty-five percent (25%) of them are subject to the tax in question. But it is not clear that the burlap tubing and raw material were purchased at wholesale and brought into the State in the condition in which it was bought, and therefore it is not subject to the tax now in question.

We think the trial court should render its decree upon the basis of the foregoing principles. The decree should be reversed and the cause remanded for that purpose.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, SIMPSON and MERRILL, JJ., concur.