103 So.2d 780

**ALABAMA POWER COMPANY**

v.

**STATE of Alabama.**

**6 Div. 218.**

Supreme Court of Alabama.

May 22, 1958.

Rehearing Denied June 19, 1958.

Martin & Blakey and Harold Bowron, Jr., Birmingham, for appellant.

John Patterson, Atty. Gen., Willard W. Livingston and Jas. R. Payne, Asst. Attys. Gen., for appellee.

MERRILL, Justice.

On August 30, 1956, the State of Alabama made a final assessment of use tax for the years 1954 and 1955 against appellant. On September 19, 1956, appellant filed a petition in the Circuit Court in Equity contesting the assessment under the provisions of Tit. 51, § 140, Code 1940.

Appellant contends that the machines against which the assessment was made were exempt under Tit. 51, § 789(p), as amended, because they were used in the processing or manufacturing of personal property, or were indispensable and necessary to the operation of manufacturing electricity at appellant's steam plants.

The contested items were divided into five categories. The trial court ruled against the appellant as to categories three, four and five; it ruled against the State as to categories one and two. Both parties seem to accept the decision as to category five, but appellant assigns error as to the rulings on categories three and four and the State cross assigns error as to the rulings on categories one and two.

It is apparent that the same argument was made and the same cases cited to the trial court as to this court. Because we reach the same conclusion and would use much of the same reasoning, we adopt the pertinent part of the opinion of Judge Giles as follows:

"It is alleged in paragraph 5 of the petition filed in this court that the final assessment was made upon use of items purchased in the year 1954, and 1955, aggregating $540,023.34, the items being listed in Exhibit 'B' to the petition, aptly classed and sub-divided into five categories. Paragraph '5' of the petition is admitted by the States' answer.

"The evidence consisted of the testimony of a single witness, the Production Manager of the Power Company, shown to be qualified as an expert, together with photographs of certain of the devices and installations involved, and the transcript of the proceedings within the Department of Revenue.

"The Court has carefully considered the evidence in the light of authorities cited in briefs, including: Curry v. Alabama Power Co., 243 Ala. 53, 8 So.2d 521; State v. Mine & Contractors Supply Co., Inc., 263 Ala. 630, 83 So.2d 425; State v. Birmingham Rail & Locomotive Co., 259 Ala. 443, 66 So.2d 884; State v. Calumet & Hecla Consolidated Copper Co., 259 Ala. 225, 66 So.2d 726; Alabama-Georgia Syrup Co. v. State, 253 Ala. 49, 42 So.2d 796; State v. Taylor, 262 Ala. 639, 80 So.2d 618; Niagara Mohawk Power Corp. v. Wanamaker, 286 App.Div. 446, 144 N.Y.S.2d 458; State v. Newbury Manufacturing Co., 265 Ala. 600, 93 So.2d 400; State v. Try-Me Bottling Co., 257 Ala. 128, 57 So.2d 537; State v. Joe H. Brady & Associates, 264 Ala. 397, 87 So. 2d 852, and an MS copy of a decision of the Board of Tax Appeals of the State of Ohio, in Union Carbide and Carbon Corporation v. Bowers, Commissioner, entered November 8, 1956.

"Category One comprises equipment for the unloading of coal barges installed and maintained at the Power Company's Barry Steam Plant, aggregating $252,544.08. To call it a 'barge unloader' does not completely suggest its utility. The evidence shows a directness and continuity of movement of coal from barges, a carrying of it through the plant site over a system of conveyors through crushing equipment into hoppers supplying boiler furnaces where combustion occurs, so that there is a transmutation of the latent energy in the coal into the 'end-product', which is man-made, commercially valuable electric power or energy. This phenomenon called electricity transpires because and by means of generation of steam in the boilers, super-heating it, using it to impart motion to turbine rotors, which in turn causes movement of the rotating parts of the generators. While some of the coal may be, and is diverted and stock-piled in reserve for deferred use, the major proportion proceeds without material interruption in the movement described.

■ "The Court does not consider that this would be similar to a situation where either fuel or raw material is simply removed from incoming carriers and stored or stock-piled for subsequent use, even within the plant site. Such a process might be merely preparatory or preliminary to production. Here, while some intra-plant transportation is certainly involved, there is also present an aspect of accumulation, elevation, and processing, directly and rather continuously 'charging' the initial energy producing mechanism, namely, the boiler furnaces. The physical and functional relation of this barge-unloader equipment to the coal-conveying belt-system (the former actually depositing coal upon the latter) is sufficiently close as to constitute it an integral part of the 'line of production'. To hold otherwise would seem to be inconsistent with the holding of our Supreme Court in the Mine Contractors Supply Company case, supra, with reference to crawler-type cranes used in the handling of pulpwood from flat cars in a paper mill operation. The coal bears some analogy to a 'raw material.' It follows that the items of Category One are exempt, and their monetary amount should be deleted from the basis for assessment of use tax.

"If the Court is correct in the above view, it follows that the coal-conveyor

equipment at the Gorgas Steam Plants Nos. 1 and 3 would also be exempt and the amount thereof, in the sum of $1,420.24, is due to be eliminated from the assessment

■ "Category Three, consisting of pump parts and attachments for hydraulic disposal of ash-residue from the boiler furnaces, presents a question which does not seem to have been touched upon in the Alabama decisions, though it has been considered favorably to the tax-payer's contentions elsewhere. It is obvious that the clearing away of ashes from the pits beneath the boiler-furnaces is immediately and imperatively necessary to continuity of production. And it is also obvious that the many thousands of tons of ashes annually resulting from operation must be carried away from the plant premises or effectively disposed of. The hydraulic system utilized by the Company appears to be efficient and well-adapted to these vital purposes.

"But this ash residue seems not to be a by-product having any value. It is simply waste material, and the prime function of the hydraulic equipment for its disposal is merely to carry it away. Necessity to operation of the plant as a whole is not the criterion of exemption. It is difficult to say how this system for removal of waste would be exempt consistently with the holdings in Southern Natural Gas Co. v. State, 261 Ala. 222, 73 So.2d 731, wherein compressors aiding the movement of the marketable product, gas, through a pipeline system were held subject to the use tax, and with the Alabama-Georgia Syrup Company case, supra, wherein platform trucks used in moving valuable products in the process of blending syrup were held not exempt.

"The Court concludes that the essential function of the hydraulic ash disposal system is not production, but is rather maintenance of the plant machinery and premises free of accumulation of waste material, and that the assessment of use tax upon its component parts was proper.

"The same conclusion is applicable to the hydraulic dredge located at the Gorgas Steam Plant, which is a principal component of the ash-disposal system.

■ "Category Five includes a large overhead traveling crane, and a smaller crane, installed in the Gorgas Steam Plant No. 3. These devices are auxiliary to production machinery, rather than being productive in themselves. They make possible inspection, maintenance and repair of manufacturing components. Important as they are, they only aid in servicing other machinery in the production line, without themselves producing tangible machine-tools or parts for such other machinery, as in the Calumet & Hecla case, supra. The Court considers the assessment proper as to these items, aggregating $168,655.37.

"Being of the opinion from all the evidence in the case that the assessment appealed from is too high, and should be fixed at a lower amount pursuant to Code 1940, Title 51, Section 140, it is accordingly,

"Ordered, adjudged and decreed by the Court that the basis of said assessment be, and same hereby is reduced from $540,023.-34, to the sum of $286,059.02, and it appearing that payment of the tax under protest has been made by the Appellant, and that the amount of tax which was invalid, and therefore excessive is $9,310.31* *— Including $7,618.93 principal, $761.89 penalty and $929.49 interest.) this last said amount is ascertained and declared to have been erroneously paid to the State and is due to be refunded to Appellant, the Alabama Power Company, a corporation, pursuant to Code 1940, Title 51, Section 140."

The decree of the lower court is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.