130 So.2d 185

STATE of Alabama

v.

T. R. MILLER MILL COMPANY, Inc.

3 Div. 941.

Supreme Court of Alabama.

May 11, 1961.

Caffey, Gallalee & Caffey, Mobile, for appellee.

MacDonald Gallion, Atty. Gen., Guy Sparks, Sp. Asst. Atty. Gen., and Jas. R. Payne, Asst. Atty. Gen., for appellant.

MERRILL, Justice.

This is an appeal by the State from a final decree of the Circuit Court of Escambia County, in Equity, setting aside and annulling a deficiency sales tax assessment made by the State Department of Revenue against the appellee.

The question is whether the Alabama sales tax applies to the withdrawal and use of various lumber and other products by the manufacturer for repairs, improvements and maintenance of the company operations.

Appellee contends that the withdrawal feature of the sales tax laws applies only to products purchased at wholesale and used by the taxpayer in the same form or condition as when purchased, and not to the withdrawal or use of products manufactured by it from raw materials so purchased at wholesale.

Appellant contends that the purpose of amending the sales tax laws by adding the withdrawal feature set out below was to enlarge the scope of "retail sales" in order to reach situations for purposes of sales tax that previously could not be reached. Prior to the amendment, various merchants and manufacturers were buying tax free wholesale purchases and had many occasions to use the materials so purchased for their own private purposes. Appellant states the effect of the amendment is to permit those who purchase at wholesale and later consume the materials and goods to report and pay directly to the Department of Revenue a sales tax based upon said consumption and withdrawal of the goods.

The evidence which was heard ore tenus by the judge consisted of the testimony of two witnesses for the appellee. Their testimony reveals that the T. R. Miller Mill Company, Inc., one of the largest corporations of its kind in Alabama, is in the business of manufacturing lumber and lumber products, sometimes referred to as "processing forest products." Of the raw materials acquired by the company during the period involved in the assessment, a great majority of the logs came from lands owned by the company in fee simple and a small percentage came from logs cut from lands in Florida and Alabama under timber deeds owned by the company. Also of the raw materials used by the company in manufacturing, a small percentage came from logs purchased outright from others within the State of Alabama. After processing, the lumber or timber from these logs is placed on the company yards in such a manner that it is not possible to distinguish the source from which the products came.

The facts further show that in the maintenance and operation of the company, if any of the three main departments of the company is in need of repairs or improvements, the necessary products manufactured by the company are withdrawn from wherever they are found on the yards and used by the particular division requesting same; for bookkeeping purposes that particular department is charged with the cost of said

products although no money ever passes between the departments for such items.

The company, being a manufacturer, buys all of its raw materials tax free and pays no tax except when it sells one of its manufactured products at retail. The facts further show that the company has paid sales tax on all retail sales to others of lumber made from the logs.

On August 28, 1958, the Department of Revenue entered a final assessment for sales tax based on the withdrawal and use by the company of these various products; the assessment, covering the period from January 1, 1955, to and including July 31, 1957, totals $2,027.76, including interest and penalty.

The decision in this case depends upon the construction and application of Subdivision (j), Subsection (1), § 752, Tit. 51, Code 1940, as amended, which for the purposes of this opinion we will hereafter refer to as Subdivision (j). This and related subdivisions were amended by Act 305, approved August 13, 1947, p. 160, and added to our statutes which is commonly known as the "self-consuming" feature of the Sales Tax Act.

■ Although § 752 was repealed in 1959, the particular sections of the statute then in effect which have application are as follows:

Title 51, § 752, Subsection (1), Subdivision (f):

"* * * Said term 'gross proceeds of sale' shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn or used from the business or stock and used or consumed in connection with said business, * * *."

Subdivision (i):

"* * * The term 'wholesale sale' shall include a sale of tangible personal property or products (including iron ore) to a manufacturer or compounder which enters into and becomes an ingredient or component part of the tangible personal property or products which he manufactures or compounds for sale, * * *."

Subdivision (j):

"* * * Sales of tangible personal property or products to manufacturers, * * * or compounders, which are used or consumed by them * * * and do not become an ingredient or component part of the tangible personal property manufactured or compounded are retail sales. The term 'sale at retail' or 'retail sale' shall also mean and include the *withdrawal, use or consumption* of any tangible personal *property by anyone who purchases same at wholesale,* except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property the tax has been paid because of such previous withdrawal, use or consumption, and *except property which enters into* and becomes an ingredient or component part of tangible personal *property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same*; and such wholesale purchaser shall report and pay the taxes thereon." (The sentence in which emphasis is supplied was added in the 1947 amendment.)

In our opinion, Subdivision (j) was amended to reach transactions which could not be taxed because there was a withdrawal and use or consumption by the purchaser at wholesale but no sale by him to another. State v. Helburn Co., 269 Ala. 164, 111 So.2d 912; Merriwether v. State, 252 Ala. 590, 42 So.2d 465, 11 A.L.R.2d 918; Report of the Legislative Interim Committee on Finance and Taxation, in the Legislature of the State of Alabama, Reg.Sess.1947,

Leg.Doc.No. 4, p. 30; 38 Op.Atty.Gen. 37 (1945).

In determining and giving effect to the legislative intent, courts may look to the history of a statute and the purpose sought to be accomplished, conditions which led to its enactment, ends to be accomplished and evils to be remedied; a rational, sensible and liberal construction with due consideration of the practical effect should be reached in ascertaining a dubious legislative intent. State v. Helburn, 269 Ala. 164, 111 So.2d 912; Birmingham Paper Co. v. Curry, 238 Ala. 138, 190 So. 86.

It is true that the construction of the meaning of a tax levy is to be strictly construed against the State and in favor of the taxpayer. State v. Reynolds Metals Co., 263 Ala. 657, 83 So.2d 709. But, the court will indulge no strained construction to give effect to this rule where a fair interpretation of the legislative intent may lead to a contrary conclusion; arbitrary rules of construction are of little value when the real intention can be gathered from the act itself. State v. Wertheimer Bag Co., 253 Ala. 124, 43 So.2d 824.

The withdrawal feature of Subdivision (j) was considered in State v. Bemis Brothers Bag Company, 267 Ala. 161, 100 So.2d 736, 739. The facts and issues in that case insofar as they are pertinent here are as follows: There, the taxpayer's plant purchased raw cotton from which it manufactured cotton cloth, part of which was sold and part of which was sent to another of its plants for further processing. The rolls of cloth were packed into cotton tubing. This cotton tubing was manufactured by the plant from cloth and twine made at the plant from raw cotton purchased by the plant; it was made from waste yarn. The assessment there, as it pertained to the cotton tubing, involved only that which the taxpayer used in shipping cloth to its other plant; to the extent that these articles were used in shipping cloth sold to others,

they were not included in the assessment. In upholding the assessment, the court said:

"It is clear that a sale of products which are to be used by the purchaser as an ingredient or component part of tangible personal property, manufactured or compounded *for sale*, is a wholesale transaction and is not subject to the sales tax as originally drafted. But by the Act of 1947, supra, appended to Title 51, section 752(f) and (j), if such purchaser at wholesale uses the product so purchased as an ingredient or component part of tangible personal property which he manufactures or compounds for his own purposes and not for resale, he must report it to the revenue department of the State and pay the tax provided by the Act of 1947, supra. * * *"

We held that the withdrawal and consumption of the cotton tubing made from the yarn, which was manufactured from the raw cotton purchased at wholesale, was taxable as a retail sale.

We think the court in the Bemis Brothers Bag Company case, supra, reached a fair and reasonable interpretation of Subdivision (j) and one which is controlling in the instant case. The purpose of the retail sales tax is to tax the ultimate consumer, regardless of who this may be. When the appellee purchased its raw materials there was no retail sale because at that time it could not be ascertained that some of the materials would be consumed by it rather than manufactured for resale. The trial judge held the Subdivision (j) did not apply to render the withdrawal a retail sale because it "expressly excepts 'property which enters into and becomes an ingredient or component part of * * * products manufactured * * *.'" But the remainder of the sentence qualifies the exception. We start again with the last quoted word—" * * * manufactured or compounded for sale and not for the personal and private use or consumption of

any person so withdrawing, using or consuming the same; * * *." Here the lumber withdrawn was used by the appellee.

Appellee relies on an earlier decision in Hamm v. Windham, 254 Ala. 356, 48 So.2d 310, to support his contention that Subdivision (j) does not apply to manufacturers or compounders. In holding that a person engaged in the restaurant business, who gives to his employees food as an element of compensation for services rendered in the preparation and service of food to customers, on which the sales tax is paid, should not pay a sales tax on the value of the food thus served to his employees, the court cited as controlling the case of State Tax Commission v. Burns, 236 Ala. 307, 182 So. 1. It should be noted that in each of these cases, the only food given the employees was that which was on hand for sale to the public but was not sold; the value of the food eaten by the employees was added to the prices charged retail customers and the sales tax was paid thereon. Also, the owner paid unemployment and social security taxes upon an estimated value of the food eaten, treating such transaction as payment of wages in food in lieu of money.

■ Most important is the fact that the Burns case was decided before the self-consuming feature of Subdivision (j) was enacted. There, the question was whether the purchase of the raw materials *originally* was a retail sale. This court held that even though some of the food was later consumed rather than sold, that fact did not render the original purchase a retail sale. However, under the amendment to Subdivision (j), a retail sale for purposes of the sales tax is effected by the *withdrawal* of property originally purchased at wholesale; the amendment does not affect the character of the original purchase at wholesale. In order for the amendment to Subdivision (j) to apply, the original purchase *must* have been at wholesale.

"We think the Act of 1947 (No. 305) which requires the purchase to have been at wholesale is sufficiently met in that respect, or it is not inconsistent to say that when the primary transaction was the sale of items not selected and set apart for one purpose or the other by the parties to it and were used principally to become an ingredient of tangible personal property compounded for resale they are bought at wholesale at least for the purpose sought to be accomplished by said Act." State v. Bemis Brothers Bag Co., 267 Ala. 161, 100 So.2d 736, 739.

Therefore, on the authority of the Bemis Brothers Bag Company case quoted above, appellee is due to pay sales tax on the withdrawal and use of lumber and other products made from raw materials purchased at wholesale.

■ Appellee contends that it is not a wholesale purchaser as covered by Subdivision (j) because a great percentage of the logs used in manufacturing came from lands which it owned outright and timbers to which it owned timber rights, and only a small percentage of logs were purchased outright. We agree that the use of logs which it owned outright was not a "wholesale purchase" within the meaning of the act. However, nowhere is it shown that the products used came from the logs which it already owned.

■■ On appeal from the final assessment of sales tax, the burden is on the taxpayer to prove its incorrectness as the final assessment is prima facie correct. State v. Joe H. Brady & Associates, 264 Ala. 397, 87 So.2d 852; Tit. 51, §§ 140, 767, Code 1940. Therefore, the products consumed by the company are presumed to have origin in a wholesale purchase. Appellee's own witnesses testified that it was impossible to ascertain whether the items used came from logs it owned outright or those which it purchased.

■ Under Alabama sales tax law, taxpayers are required to keep such records and accounts as may be necessary to de-

termine the amount of tax due. Tit. 51, § 759, Code 1940. The purpose of such a requirement is to enable a proper determination of tax due. The State is not required to rely on verbal assertions of the taxpayer in determining the correctness of the tax return, but records should be available disclosing the business transacted. Where there are no proper entries on the records to show the business done, the taxpayer must suffer the penalty of noncompliance and pay on the sales not so accurately recorded as exempt. State v. Levey, 248 Ala. 656, 29 So.2d 129.

Here, where it is not possible to tell from an examination of the books whether the products used came from a wholesale purchase or from logs it owned outright, appellee has not met the burden of proving the incorrectness of the assessment.

Appellee also contends that the assessment should be set aside because certain facts, which tend to support the validity of the assessment and which first came to light during the taking of testimony in the case, were not relied on by the State in its answer supporting the assessment as valid. We cannot agree.

The State points out that the testimony disclosing this phase of the case was elicited from appellee's own witness and it did nothing more or less than depict the factual situation that existed at and during the time the audit was made by examiners for the State Department of Revenue, that its answer to the bill of complaint denied all allegations of the bill and all legal conclusions set up in the bill.

We recognize the established principle that a presumption should be indulged in favor of the conclusion of a trial judge who sees and hears the witnesses when the evidence is in conflict. However, here, the evidence consisted of the testimony of two witnesses, both of whom were called by the appellee. Since their admissible testimony was not conflicting, no presumption in favor of the findings of the trial court

need be indulged. State v. Joe H. Brady & Associates, 264 Ala. 397, 87 So.2d 852.

The appellee has not sustained the burden of proving the invalidity of the assessment.

Since only the legality, and not the amount, of the assessment was contested, the judgment of the lower court is reversed and one is here rendered in favor of appellant for the amount of the assessment.

Reversed and rendered.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.