THOMPSON, Presiding Judge.
Wilburn Quarries, LLC, and its members appeal from a judgment of the circuit court upholding the decision of an administrative law judge (“ALJ”) in favor of the State Department of Revenue (“the Department”). Specifically, the ALJ found that the Alabama Uniform Severance Tax (“the severance tax”), § 40-13-50 et seq., Ala.Code 1975, applied to severed materials purchased from a site that Wilburn Quarries owned in Cullman County and that, therefore, Wilburn Quarries owed $52,176.87 in taxes and interest, as assessed by the Department.
The record indicates the following. In the 1960s and 1970s, King Coal Company leased certain property in Cullman County from T.J. Pate. King Coal Company operated a strip mine on the property. As part of its mining operation, King Coal Company removed “overburden,” including sandstone and other natural materials, and left it in what the parties referred to as “spoil piles.” A second strip-mining operation on adjoining property, which Pate also owned, discarded its overburden in spoil piles as well. The spoil piles from both mining operations were left on Pate’s property.
In 2005, Pate and two of his sons formed Wilburn Quarries. Wilburn Quarries is in the business of removing certain materials from the spoil piles on Pate’s property, processing that material into different grades of crushed sandrock, then selling the processed materials for use in gravel, cement, and asphalt.
In 2005, Wilburn Quarries registered with the Department to pay the severance tax. It collected the severance tax for the first quarter of 2005 but failed to pay it from April 2005 to August 2007. In a letter that Wilburn Quarries’ office manager Kris Broadhead sent to the Department dated October 22, 2007, Wilburn Quarries recognized that it was delinquent in its payment of the severance tax and sought to work out a payment plan. In the letter, Broadhead estimated that Wilburn Quar *1080 ries owed approximately $50,000 in severance taxes. On March 7, 2008, the Department entered a final assessment against Wilburn Quarries for $52,176.87, the severance tax owed from April 2005 to August 2007.
Wilburn Quarries and its members appealed the final assessment to the Department’s administrative law division. The basis for its appeal was that it had never been engaged in mining or quarrying operations in Cullman County; therefore, it argued, it was not subject to the severance tax. After a hearing on the matter, the ALJ upheld the final assessment. Wilburn Quarries and its members then appealed to the Cullman Circuit Court, which also affirmed the final assessment. Wilburn Quarries and its members appealed to the Alabama Supreme Court. Our supreme court transferred the appeal to this court, which has exclusive jurisdiction over appeals from decisions of administrative agencies other than the Alabama Public Service Commission. See § 12-3-10, Ala. Code 1975.
On appeal Wilburn Quarries and its members argue, as they did before the ALJ and the circuit court, that Wilburn Quarries was not subject to the severance tax because, they say, it was not engaged in mining or quarrying. Specifically, they assert that because Wilburn Quarries processed materials that had already been removed from their natural state during the mining operations, it was not responsible for severance taxes when it sold the materials taken from those operations’ spoil piles. The facts of this case are not disputed. Instead, resolution of this issue requires us to apply the rules of statutory construction; thus, our standard of review is de novo.
“Our standard of review is de novo: ‘Because the issues presented by [this appeal] concern only questions of law involving statutory construction, the standard of review is de novo. See Taylor v. Cox, 710 So.2d 406 (Ala.1998).’ Whitehurst v. Baker, 959 So.2d 69, 70 (Ala.2006). This Court has also said:
“ ‘[I]t is this Court’s responsibility in a case involving statutory construction to give effect to the legislature’s intent in enacting a statute when that intent is manifested in the wording of the statute. Bean Dredging[, LLC v. Alabama Dep’t of Revenue], 855 So.2d [513] at 517 [ (Ala.2003) ] .... “ ‘If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’ ” ’ ” Pitts v. Gangi, 896 So.2d 433, 436 (Ala.2004) (quoting DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275 (Ala.1998), quoting in turn earlier cases). In determining the intent of the legislature, we must examine the statute as a whole and, if possible, give effect to each section. Employees’ Retirement Sys. of Alabama v. Head, 369 So.2d 1227, 1228 (Ala.1979).’
“Ex parte Exxon Mobil Corp., 926 So.2d 303, 309 (Ala.2005). Further,
“ ‘when determining legislative intent from the language used in a statute, a court may explain the language, but it may not detract from or add to the statute. Siegelman v. Chase Manhattan Bank (USA), Nat’l Ass’n, 575 So.2d 1041, 1045 (Ala.1991). When the language is clear, there is no room for judicial construction. Employees’ Retirement System [v. Head], 369 So.2d [1227,] 1228 [ (Ala.2002) ].’
“Water Works & Sewer Bd. of Selma, 833 So.2d 604, 607 (Ala.2002).”
Ex parte Birmingham Bd. of Educ., 45 So.3d 764, 767 (Ala.2009). Further, our *1081 supreme court has said recently of statutory construction:
“‘Our inquiry is governed by settled principles of statutory construction:
“ ‘ “ ‘The fundamental rule of statutory construction is that this Court is to ascertain and effectuate the legislative intent as expressed in the statute. League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). In this ascertainment, we must look to the entire Act instead of isolated phrases or clauses; Opinion of the Justices, 264 Ala. 176, 85 So.2d 391 (1956).’ ” ’
“Bright v. Calhoun, 988 So.2d 492, 497 (Ala.2008) (quoting City of Bessemer v. McClain, 957 So.2d 1061, 1074-75 (Ala.2006), quoting in turn Darks Dairy, Inc. v. Alabama Dairy Comm’n, 367 So.2d 1378, 1380 (Ala.1979) (emphasis omitted)).
“To determine legislative intent, the Court must first look to the language of the statute. If, giving the statutory language its plain and ordinary meaning, we conclude that the language is unambiguous, then there is no room for judicial construction. Ex parte Waddail, 827 So.2d 789, 794 (Ala.2001).”
Fluker v. Wolff, 46 So.3d 942, 953 (Ala.2010).
The severance tax applicable to mining and quarrying reads as follows:
“There is hereby levied, in addition to all other taxes imposed by law, a severance tax on the purchaser of all severed material severed from the ground and sold as tangible personal property. The tax shall be levied primarily to compensate the county for the use of its roads and infrastructure and also for the benefit, health, safety, and economic development of the county in which the severed material is severed and the proceeds thereof shall be distributed and allocated as provided in Section 40-13-58.”
§ 40-13-52, Ala.Code 1975.
For purposes of the severance tax, a “purchaser” is defined as “[a] person acquiring severed materials from a producer and liable for the tax imposed hereunder.” § 40-13-51(7), Ala.Code 1975. In turn, a “producer” is defined as “[a]n operator engaged in the sale of severed materials.” § 40-13-51(6), Ala.Code 1975. An “operator” is defined as “[a]ny person engaged in mining or quarrying operations in the state, whether individually, jointly, or through a parent, subsidiary, or affiliated company, or by agent, employee, or contractor.” § 40-13-51(4), Ala.Code 1975. The terms “mining” and “quarrying” are not defined in the statute, and there is no caselaw regarding the definitions of those terms as they are used in the statute authorizing the severance tax.
In determining, under the facts of this case, that the severance tax applied to Wilburn Quarries, the ALJ noted that the legislature’s stated purpose in levying the severance tax was “primarily to compensate the county for the use of its roads and infrastructure and also for the benefit, health, safety, and economic development of the county in which the severed material is severed....” The ALJ then went on to find as follows:
“It is thus irrelevant for purposes of the tax whether the materials were removed from their natural state by the seller, or were previously removed by another party. In either case, the severed materials are removed from a quarry and hauled over the county’s roads. The legislature intended for the tax to be paid to the county to maintain those roads. The tax thus applies in this case.”
*1082 In affirming the decision of the ALJ, the circuit court stated:
“It is undisputed that the materials being sold by [Wilburn Quarries] were severed from the earth or ground. The fact that [Wilburn Quarries] is not the sole entity responsible for the severing does not, in this Court’s opinion, relieve [it] from the responsibility of collecting the tax from the purchaser and remitting same to the [Department]. [Wilburn Quarries] is obviously completing the severance and engaging in the sale of severed materials. In this Court’s opinion, that constitutes a quarry operation and is consistent with the legislature’s intent in adopting [§ 40-13-52].”
We agree with the reasoning of the ALJ and of the circuit court. The plain and ordinary language of § 40-13-52 makes clear that the legislature intended to use the severance tax to compensate counties with mining and quarrying operations for the use of their roads and infrastructure and to allow each county to derive some financial benefit from the raw materials taken from within its boundaries.
The tax is levied upon the purchaser of the material that has been severed from its natural state. In this case, Wilburn Quarries processed the materials that had been severed from the ground during the mining operations and sold it to purchasers, as that term is defined in § 40-13-51, on whom the tax was levied. An “operator” is not required to be the entity that physically removes the materials from their natural state. The statute provides that an operator may be involved in mining or quarrying “individually, jointly, or through a parent, subsidiary, or affiliated company, or by agent, employee, or contractor.” § 40-13-51(4). In this case, Wilburn Quarries was able to take advantage of the materials found in the spoil piles that the mining operations, which had leased the land mined from Pate, had left on Pate’s property. As the circuit court pointed out, Wilburn Quarries was the entity that completed the severance, processed the material, and undertook the sale of the severed material. Therefore, Wilburn Quarries is the producer responsible for collecting the tax assessed by the purchaser of the severed material. At no other point in the process was there a purchaser of the severed materials who would be subject to the severance tax.
We conclude that Wilburn Quarries was a producer engaged in the sale of the severed materials subject to the severance tax and, thus, was responsible for the collection of the severance tax. Accordingly, the circuit court properly affirmed the decision of the ALJ, which upheld the final tax assessment of the Department.
Wilburn Quarries and its members assert that because the legislature did not specifically define the scope of activities that constitute “quarrying,” the severance tax as applied in this case is inherently ambiguous and should be construed in favor of Wilburn Quarries, as the taxpayer. As Wilburn Quarries points out, “[t]axing statutes and ordinances are to be construed strictly against the taxing authority and in favor of the taxpayer.” Chism v. Jefferson County, 954 So.2d 1058, 1066 n. 12 (Ala.2006); see also City of Pinson v. Utilities Bd. of City of Oneonta, 986 So.2d 367, 373 (Ala.2007). However, it is equally true that
“ ‘the court will indulge no strained construction to give effect to this rule where a fair interpretation of the legislative intent may lead to a contrary conclusion; arbitrary rules of construction are of little value when the real intention can be gathered from the act itself. State v. Wertheimer Bag Co., 253 Ala. 124, 43 So.2d 824 [ (1950) ].’ ”
*1083 State v. Morrison Cafeterias Consol., Inc. of Delaware, 487 So.2d 898, 902 (Ala.1985) (quoting State v. T.R. Miller Mill Co., 272 Ala. 135, 139, 130 So.2d 185, 188 (1961)). “Additionally, when the highest administrative officials charged with the duty of administering the tax laws have construed a tax statute, their construction should be given favorable consideration.” Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue, 855 So.2d 513, 517 (Ala.2003) (citing Standard Dredging Corp. v. State, 271 Ala. 22, 28, 122 So.2d 280, 285 (1960); and State v. Birmingham Rail & Locomotive Co., 259 Ala. 443, 448, 66 So.2d 884, 889 (1953)).
As discussed previously, the legislature intended to collect a tax from purchasers of materials severed from their natural state. There is no dispute that the raw materials that Wilburn Quarries processed had been severed from their natural state and that Wilburn Quarries was the entity that sold the processed materials to the purchasers on whom the severance tax was levied. There is no other entity that logically can collect the severance tax. The Department’s application of the severance tax to the materials processed and sold by Wilburn Quarries is logical and represents a fair construction of the statute levying the severance tax. Accordingly, the circuit court did not act improperly in affirming the ALJ’s decision to uphold the final assessment of the Department.
For the reasons set forth above, the judgment of the circuit court is affirmed.
AFFIRMED.
PITTMAN, THOMAS, and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.