57 So.2d 537

## STATE v. TRY-ME BOTTLING CO. et al.

### 6 Div. 264.

Supreme Court of Alabama.

March 13, 1952.

Si Garrett, Atty. Gen., and H. Grady Tiller and W. H. Burton, Jr., Asst. Attys. Gen., for appellant.

Jackson, Rives, Pettus & Peterson, Birmingham, for appellees.

STAKELY, Justice.

On March 7, 1950, the State Department of Revenue made an assessment for a use tax on a Meyer Domore Bottle Cleaner together with parts, attachments and replacements therefor which were procured by appellees, doing business under the name of Try-Me Bottling Company, outside the State of Alabama for use in their bottling plant at Birmingham, Alabama. Under the provisions of § 140, Title 51, Code of 1940 an appeal was taken to the Circuit Court of Jefferson County, in Equity. A decree was entered by the equity court vacating the assessment and ordering a refund of the taxes which appellees had paid. Hence this appeal.

The question for decision is whether the bottle washing machine, which has been referred to, comes within the exemption set forth in § 789(p), Title 51, Code of 1940, Pocket Part, which is as follows: "(p) Machines used in mining, quarrying, compounding, processing, and manufacturing of tangible personal property; provided that the term 'machines,' as herein used, shall include machinery which is used for mining, quarrying, compounding, processing, or manufacturing tangible personal property, and the parts of such machines, attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used."

The appellees are engaged in the soft drink business at Birmingham, Alabama. The soft drinks made and sold by appellees in nine ounce bottles under the name of Try-Me are in various flavors. Raw materials are procured for these various flavors from outside sources and are then compounded in the syrup room on the second floor of the plant of appellees into finished flavors in the form of syrups. Syrup for each such flavor is then placed in a mixing tank on the second floor of the plant. There is a syrup line from the mixing plant to the syrup machine located on the floor below so that the syrup may flow by gravity to the syrup machine which in turn runs syrup into bottles as hereinafter described. The actual operation by which the soft drink is prepared and bottled for delivery is a continuous operation described briefly so far as pertinent here as follows:

The empty Try-Me bottles whether new or previously used are placed by hand in the rotary rack of the bottle washing machine known as "Meyer Domore Bottle Cleaner" and during this operation the bottles are thoroughly washed and steri-

lized. This bottle washing machine is generally called a "soaker". The soaker not only serves the essential primary function of washing and sterilizing bottles, but it also delivers the bottles for automatic feeding at the proper rate to the machine line so that maximum mass production of bottled soft drinks is achieved.

When the bottles have been washed and sterilized in the soaker they are moved automatically on a connected conveyor belt to the next machine which is the syruper. The syruper is fed with syrup by a connection to the mixing tank holding the syrup on the floor above. After the syrup is run into the bottles from the syrup machine the bottles are then moved a short distance by a connected conveyor belt to what is known as a filler machine where carbonated water fills the bottles. After the bottles are filled with carbonated water, the bottles are then moved by connected conveyor belt to the crowner machine where metal tops with cork liners are used to seal the bottles. After the bottles are crowned, the bottles then are moved by the connected conveyor belt to another machine which performs an automatic mixing function by shaking each bottle separately in order to insure the proper compounding and mixing of the carbonated water with the syrup. After the automatic mixing operation the bottles then are moved by connected conveyor belt past a light for final visual inspection by an employee of the appellees. After the visual inspection of each bottle the bottles then are moved on to the accumulating table where they are removed by hand and placed in cases for distribution and subsequent sale by wholesale.

From the time the bottles are placed in the soaker to the time the bottled drinks are placed in cases for distribution and sale, the operation is continuous and uninterrupted, with the bottles moving steadily from one machine to the other. The entire operation is a machine operation with no bottle being touched by hand unless a bottle is broken or the machine breaks down or some bottle fails to pass the visual inspection test. The commencement of the continuous operation originates at the soaker whether new or previously used bottles are to be used and the soaker is an integral part of the production line physically connected with the other machines in the line and the soaker is an integral part of the plant and the continuity of the process is never broken.

It was stipulated between the parties that the appellees are engaged in compounding, processing and manufacturing soft drinks which are sold at wholesale in bottles to retailers, the sale including both the drink and the bottle. The amount of the sale is stated by appellees in invoices to the retailer by stating separately the amount for which the drink is sold and the amount for which the bottle is sold. The retailer has the privilege of returning the empty bottles so sold by appellees to the retailer and upon the return of empty bottles by the retailer to appellees, the retailer receives a refund of the amount at which such bottles are originally invoiced to the retailer or an equivalent credit on the books of the appellees.

In Curry v. Alabama Power Co., 243 Ala. 53, 8 So.2d 521, the words "manufacturing" and "processing" were defined and need not be redefined here. The word "compound" means to put together as elements, ingredients or parts, to form a whole; to combine; to unite; to form or make up as a composite product, by combining different elements, ingredients and parts, as to compound a medicine. 8 Words & Phrases, p. 302. See Hamm, Com'r of Revenue v. Windham, 254 Ala. 356, 48 So. 2d 310. The words manufacturing, processing and compounding are used disjunctively in the statute and are evidently intended to have a broad and all inclusive meaning. There is no attempt in the statute to limit or qualify their meaning. In other words, the three words so used are intended to cover all the operations or processes by which the finished or ultimate product has been integrated from elements originally diverse in their forms.

The determining factor in the present case is the ascertainment of what is the finished product which is offered for sale by the appellees at wholesale. It is the,

position of the State that the finished product of the operation is the soft drink. If this is true, obviously the bottle is excluded. We consider, however, that it is not the soft drink which is the finished product but the bottled soft drink which is the finished product of the operations of the appellees. There is no doubt that the preparation of the bottle for the liquid is an essential part of the preparation without which the drink cannot be processed for sale.

The bottled drink is the aggregate result of all the single purpose machines in the plant which adds up to the finished product. The plant is arranged for the bottling of soft drinks in mass production. The plant is entirely machine operated and if any machine from the soaker in question to the capper at the end of the line fails to function the operation stops. No one of the machines can be said to have produced the bottled soft drink any more than any other one of the machines in the line. It would be a mistake to consider that the operations which result in the bottled soft drink do not include the proper preparation of the bottles for the finished product. The drink is not sold separate and apart from the bottles and the bottles are obviously needed to complete the finished product which is the purpose of the operation. It is no answer to say that the retailer has the right to return the bottles and secure credit in the amount at which the bottles are invoiced. Such an arrangement does not in any way indicate that when the bottled product is put on the market, such finished product does not include both the drink and the bottle.

We think it clear that the lower court acted correctly in vacating the assessment and in holding that the soaker machine is a part of the process which produces the ultimate product.

Affirmed.

BROWN, FOSTER and LAWSON, JJ., concur.