**OKLAHOMA TAX COMMISSION,**
**Plaintiff in Error,**

v.

**OKLAHOMA COCA–COLA BOTTLING COMPANY, a corporation, Defendant in Error.**

**No. 43617.**

Supreme Court of Oklahoma.

Feb. 8, 1972.

Albert D. Lynn, Mike Tapp, Oklahoma City, for plaintiff in error.

Roy L. Sullivan, Kent F. Frates, Sullivan, Frates & Maguire, Oklahoma City, for defendant in error.

WILLIAMS, Justice.

There is involved here an appeal by the plaintiff in error, Oklahoma Tax Commission, hereinafter referred to as "Commission", from a judgment of the District Court of Oklahoma County in favor of defendant in error, hereinafter referred to as "taxpayer" against the "Commission" for the refund of taxes paid under protest.

Commission contends that the protest filed by the taxpayer with the Commission was insufficient and the trial court had no jurisdiction to enter the refund judgment in favor of the taxpayer.

Commission on January 10, 1968 assessed a use tax against the taxpayer in the amount of $2,918.41. It was stipulated that the time of the taxpayer for filing protest of the assessment be extended to March 18, 1968. On March 15, 1968, one of the attorneys wrote the Commission as follows:

"It is my understanding that the date for filing a protest in connection with the Use Tax assessed against Oklahoma Coca-Cola Bottling Co. on January 10, 1968 has now been extended to March 20, 1968.

"Mr. Sullivan informs me that Coca-Cola intends to pay this tax under protest and file suit for a refund in the District Court."

On April 1, 1968 the taxpayer paid the tax under protest. Letter from the taxpayer's attorney to the Commission transmitting the check is as follows:

"We hand you herewith check #58923 of Oklahoma Coca-Cola Bottling Company in the amount of $2,918.41. This

covers your assessment of use tax, interest and penalty.

"This Company files its protest to the assessment. This is to notify you that such money should be held by you in accordance with the provisions of Title 68, Section 226 et seq. This Company protests said assessment on the grounds the same was not made in accordance with the Use Tax Act of the State of Oklahoma as the products covered in the assessment are exempt from Use Tax."

The present suit to recover a refund of the taxes paid was filed on April 30, 1968.

Commission contends that the notice furnished the Commission by the letters of March 15, 1968 and April 1, 1968 do not constitute a timely protest of the assessment of the taxes and that the assessment of the taxes became final upon the expiration of the protest period on March 18, 1968, Laws, 1965 c. 414 § 2, 68 O.S.1965, § 221(e) and (g).

The present suit to recover a refund of the taxes is prosecuted under the provisions of Laws 1965 c. 414 § 2, 68 O.S.1965, § 226. Plaintiff in error says that a taxpayer who feels aggrieved at an assessment of a State tax may ask for a hearing before the Tax Commission under § 221 with an appeal to the Supreme Court under § 225 from an adverse ruling on the one hand or on the other hand he may pay the tax and give notice of intent to do so and file suit in district court for recovery of the tax under § 226. In that connection, the contention is that a taxpayer pursuing the remedy of suit under § 226 must give the notice described in § 221(c) and pay the tax within the time set by § 221(e), (f) and (g).

Sub-section (g) of § 221 specifically provides that, "The provisions of Section 226 of this Code, shall not apply where a proposed assessment or an assessment of taxes has been permitted to become final."

Sub-section (c) of the section (§ 221) which affords a hearing before the Commission provides that within thirty (30) days after the mailing of the assessment of taxes made by the Commission, the taxpayer may file with the Commission a written protest under oath setting forth the amount said to be owed, the error he alleges to have been made in the assessment, his argument and authorities in support, the relief he seeks and his verification thereof. Pursuant to sub-section (f), the Commission may extend the time for filing that protest an additional ninety (90) days. By sub-section (e), an assessment becomes final if no protest is filed within the thirty days or an extension thereof.

The statute under which defendant in error has proceeded in the district court (§ 226) does not limit the time for the taxpayer to give notice to the Commission of his intention to pay the taxes under protest and file his suit to recover the amount. As above noted, however, there is the provision in § 221(g) that he must not let the assessment become final for the provisions of § 226 to apply.

As has been noted, plaintiff in error argues that defendant in error in this case should have paid the tax here involved and timely made the protest described in § 221(c) in order to proceed under § 226.

Reasons for a difference in the procedure set forth for pursuit of the alternative remedies are immediately apparent. Further, the statutes on civil pleadings and procedure are not made applicable to § 221 proceedings before the Commission.

Furthermore, in this connection it is to be noted that a § 226 proceeding is specifically designated in the section as being an additional and alternative remedy. At no point in either § 221 or § 226 are the provisions of either explicitly made applicable to proceedings under the other. Quite to the contrary, the effect of what the Legislature said in the quoted portion of § 221(g), supra, was that the provisions of § 226, alternatively allowing suit in the district court for recovery of taxes paid, should not apply (or in other words be available to a taxpayer as an alternative course of action) if he should permit the proposed assessment to "become final".

■ The effect of this, then, we believe and hold, is to require that a taxpayer must not let the proposed assessment become final if § 226 is to be available to him. Before the proposed assessment herein could have become final and on March 18, 1968, the taxpayer's attorney wrote advising that the tax would be paid and suit filed under § 226. A more formal specification of error (notice) was delivered and payment made within fourteen (14) days thereafter and suit commenced within thirty (30) days from that time, all well within the extendable limits (4 months) from mailing notice of the proposed assessment.

The Commission, in addition to its argument that the notice received by it on March 18th was not a sufficient compliance with § 221(c), which we have held to be inapplicable in this case, also argues that payment of the tax should likewise have been made on March 18th.

It is to be noted the Legislature specified that in the event of a proceeding pursuant to § 221, that is before the Tax Commission, and an appeal from the Commission's order to the Supreme Court, the taxpayer must pay the amounts assessed within thirty (30) days from date of mailing the Commission's ruling on the appeal or he may even file a bond for double the amount due. See § 225(b), (c) and (d). No final date for payment of the proposed assessment made pursuant to § 221 if pursuing the remedy made available by § 226 was set forth by the Legislature. No reason to hold that it should be paid by the time of giving notice of intent to pursue the remedy afforded by § 226 appears in the applicable statutes.

Assuming without deciding that the taxpayer pursuing the statutory alternative remedy of bringing suit in the district court pursuant to § 226 should pay the tax and bring his suit within a reasonable time after notifying the Commission of his intention to do so, the actions taken by the taxpayer in these regards in this case appear to have been reasonably timely.

■ We have held that the notice of protest of a taxpayer to the taxing authority of his intention to protest the assessment of taxes need not be in any particular form. The notice or protest is sufficient if it apprises the taxing authority that the assessment is protested and the reasons for the protest. Jones v. Kennedy (1926) 118 Okl. 224, 247 P. 53.

The letters of March 15, 1968 and April 1, 1968 are sufficient compliance with § 226, supra and constitute a proper predicate for the filing of a suit to recover a refund of the taxes paid.

We now turn to the merits of the litigation. Taxpayer operates a plant in Oklahoma City, for the manufacture of soft beverages.

■ The manufacturing process consists of placing bottles in a washing machine where they are cleaned and washed, and discharged onto a conveyor which transfers them to an automatic inspection machine. The bottles are then transferred by conveyor to a filling machine, where the bottles are filled with beverage syrup, water and carbonated gas in certain specified proportions. The bottles are crowned or capped. The filled bottles are transferred mechanically to a full bottle inspection machine and then to the packing machine. The bottle is not touched by human hands from the time it is placed in the washing machine until it is filled and ready for distribution on the market.

The managing vice-president of the taxpayer testified the processing system "could not operate without a washer."

Taxpayer sells its products principally to dealers and wholesalers requiring the purchasers to possess a sales tax license permit. In sales made to purchasers not possessing a sales license permit the taxpayer pays a sales tax on the purchase. A sales tax is eventually paid on all beverages sold and distributed by the taxpayer.

During the years 1965 and 1966, taxpayer purchased two bottle-washing machines outside the State of Oklahoma, moved

them into the State and installed them in its manufacturing plant, in Oklahoma City. It did not pay a use tax on the purchase price of the washers.

On January 10, 1968, Commission assessed a use tax against the taxpayer in the amount of $2,918.41 covering the use tax on the purchase of the two bottle-washing machines. Taxpayer paid the tax under protest and filed suit in the District Court of Oklahoma County to recover the taxes. The trial court held there was no use tax due and entered judgment in favor of the plaintiff.

The Oklahoma Legislature in 1963 enacted a Use Tax Code. Laws 1963, c. 368 § 2, Renumbered Laws 1965, c. 215 § 2, 68 O.S.Supp.1965, § 1402, provides:

"There is hereby levied and there shall be paid by every person storing, using or otherwise consuming, within this State, tangible personal property purchased or brought into this State, an excise tax on the storage, use or other consumption in this State of such property at the rate of two per cent (2%) of the purchase price of such property. * * *"

The Statute specifically exempts manufacturing and processing plants from the payment of the tax under certain conditions. Laws 1963, c. 368, § 2, Renumbered Laws 1965, c. 215 § 2, 68 O.S.Supp.1965, § 1404(d) provides:

"in respect to the use of machinery and equipment purchased and used by persons establishing new manufacturing or processing plants in Oklahoma, and machinery and equipment purchased and used by persons to the operation of manufacturing plants already established in Oklahoma. Provided, this exemption shall not apply unless such machinery and equipment is incorporated into, and is directly used in, the process of manufacturing property subject to taxation under Oklahoma Sales Tax Code, Title 68, Article 13. The term 'manufacturing plants' shall mean those establishments primarily engaged in manufacturing or processing operations, and generally recognized as such."

Taxpayer contends that the bottle-washing machines purchased were incorporated into its manufacturing plant in Oklahoma City and were directly used by it as an integral part in processing in the manufacture of its products on which sales taxes were collected and paid, upon the sale thereof, and therefore no use or sales tax may be assessed against the purchase price of the machines.

Commission cites Tulsa Machinery Co. v. Oklahoma Tax Commission (1953) 208 Okl. 138, 253 P.2d 1067, wherein the taxpayer sold to the companies operating rock crushers, a diesel shovel, also parts for the diesel shovel and parts for a pneumatic drill. It was established that such equipment and parts were used by the rock crusher companies in excavating for securing the rock and hauling the rock to the crushers. The equipment was not used in connection with the operation of the crushers and was not incorporated into and directly used in the manufacture of crushed rock. In the case the Court indicates that if the equipment had been used as a part of the operation of the rock crushers no sales taxes would have been due. The case is not in point because of the factual distinction.

Commission also cites Curry Materials Company v. Oklahoma Tax Commission, Okl.1957, 319 P.2d 292, involving the assessment of a sales tax on the sale of a washer and similar equipment used by a materials company in washing silt and dirt from sand and gravel before selling the material to construction contractors. The Court held there was no change in the basic material, sand and gravel, by washing it in the washer, therefore the element of manufacturing was not involved. The distinction is apparent.

In the case now before us the bottle washing machines were used by the taxpayer as an integral part of its process in manufacturing its products.

The case of State v. Try-Me Bottling Co. (1952) 257 Ala. 128, 57 So.2d 537 is squarely in point. In the Alabama case the taxing authorities attempted to assess a use tax on a bottle washing machine used by a bottling company in washing beverage bottles before filling them with a beverage known as "Try-Me". The operation methods of the Alabama plant are identical with the methods employed in the operation of the plant involved here. In holding that no use tax should be assessed against the purchaser of the bottle washer the Alabama Court said:

"The bottled drink is the aggregate result of all the single purpose machines in the plant which adds up to the finished product. The plant is arranged for the bottling of soft drinks in mass production. The plant is entirely machine operated and if any machine from the soaker in question to the capper at the end of the line fails to function the operation stops. No one of the machines can be said to have produced the bottled soft drink any more than any other one of the machines in the line. It would be a mistake to consider that the operations which result in the bottled soft drink do not include the proper preparation of the bottles for the finished product. The drink is not sold separate and apart from the bottles and the bottles are obviously needed to complete the finished product which is the purpose of the operation. It is no answer to say that the retailer has the right to return the bottles and secure credit in the amount at which the bottles are invoiced. Such an arrangement does not in any way indicate that when the bottled product is put on the market, such finished product does not include both the drink and the bottle."

In Zoller Brewing Co. v. State Tax Commission (1942) 232 Iowa 1104, 5 N. W.2d 643, the Iowa Court held that a brewing company was not required to pay a use tax on the purchase of a mechanical case-packer used by the brewing company in the sale and distribution of the beer it produced.

In Cain's Coffee Company v. City of Muskogee (1935) 171 Okl. 635, 44 P.2d 50, quoting from the Illinois case of Dolese & Shepard Co. v. O'Connell, 257 Ill. 43, 100 N.E. 235, defined the word "manufacture" as follows:

" * * * the word 'manufacture' is not to be given its technical meaning. The Century Dictionary defines it as 'the production of articles for use from raw or prepared materials by giving these materials new forms, qualities, properties or combinations, whether by hand labor or machine.'

" 'Whenever labor is bestowed upon an article which results in its assuming a new form, possessing new qualities or new combinations, the process of manufacturing has taken place, whether the thing produced be a small article of commerce or a structure, such as a house, road, or bridge.' "

The taxpayer is in the manufacturing business. It manufactures Coca Cola and other beverages. It takes raw materials, beverage syrup, water, carbonated gas, assembles these materials and caps them in a clean bottle and the manufactured product, Coca Cola is complete. It employs the modern assembly line method in manufacturing its product. One machine washes and cleans the bottles. A second machine fills and caps the bottles. A third machine inspects the bottles. Each machine complements the others. The manufacturing process could not be completed if either machine were not functioning properly. The bottle-washing machines are an integral part of the manufacturing process. The purchase price of these machines is exempt from the assessment of a use tax under the provision of 68 O.S.Supp.1965, § 1402, supra.

Judgment of the trial court affirmed.

BERRY, C. J., DAVISON, V. C. J., and JACKSON, IRWIN, HODGES, LAVENDER, and BARNES, JJ., concur.