**McKEE PRODUCTS, INC., Appellant,**

v.

**STATE of Oklahoma ex rel. The OKLA-
HOMA TAX COMMISSION, Appellee.**

**No. 70330.**

Court of Appeals of Oklahoma,
Division 2.

March 7, 1989.

Rehearing Denied May 22, 1989.

Certiorari Denied March 27, 1990.

Hugh D. Rice, Michael R. Perri, Rainey,
Ross, Rice & Binns, Oklahoma City, for
appellant.

Marjorie Welch, Asst. Gen. Counsel,
Oklahoma City, for appellee.

MEANS, Judge.

Taxpayer McKee Products appeals from
an order of the Oklahoma Tax Commission
concerning sales and use tax assessments
on certain equipment and machinery used
in its manufacturing business. The Com-
mission found that some of Taxpayer's
equipment was not exempt from sales and
use tax and assessed taxes, interest, and
penalties of approximately $33,000. Hav-
ing reviewed the record and applicable law,
we reverse and remand.

McKee Products is engaged in the busi-
ness of manufacturing railroad ballast at
its facilities near Davis. This ballast is
sold to the Atchison, Topeka and Santa Fe
Railway pursuant to a contract. The con-
tract sets out specifications for the ballast,
quantity, quality, and delivery responsibili-
ties. As part of its responsibility, McKee
loads the ballast onto the railroad's cars in
Davis. The railroad may reject the ballast
at any time it fails to conform with the
specifications, including the point of the
railroad's use.

In the process of changing rock into bal-
last, McKee first quarries the rock at its pit
and then transports the rock to its auto-
mated plant a short distance away. At the
main plant the rock is placed in the primary
crusher where it is crushed into smaller
rocks. This crushed rock is stockpiled and,
as it is needed by the railroad, is fed onto a
conveyor belt and transported to a screen-
ing unit.

At the screening unit, the rock is sorted
according to size. Larger rock is routed by
another conveyor belt to the secondary
crusher where it is crushed again. Rock
which meets the size specifications passes

through a screen where it is once again taken by conveyor belt to be stockpiled until needed by the railroad. Crushed rock is stockpiled at the main plant according to size.

When a certain size of ballast is needed, the rock is fed from the appropriate stockpile onto a conveyor belt which takes it to the loading dock at the main plant. There the rock is weighed and loaded on trucks for transport to the rescreening plant. The rescreening plant is twelve miles from the main plant and adjacent to the railroad. When the rock arrives at the rescreening plant it must pass through the final screening process where it is washed, graded according to specification, weighed, and prepared as a final product. If it meets all the specifications of the contract, the ballast is loaded into the railroad cars, the sale is completed, and the ballast is subject to Oklahoma sales tax.

The controversy involved in this appeal concerns which equipment and machinery at McKee's facility is exempt from certain tax under the Oklahoma Tax Code. Oklahoma's code contains a number of exemptions for manufacturers and manufacturing. The manufacturer's use tax exemption, a type of personal property tax exemption, is found in 68 O.S.1981 § 1404(d):

The provisions of this article shall not apply:

. . . .

(d) in respect to the use of machinery and equipment purchased and used by persons establishing new manufacturing or processing plants in Oklahoma, and machinery and equipment purchased and used by persons to the operation of manufacturing plants already established in Oklahoma. Provided, this exemption shall not apply unless such machinery and equipment is incorporated into, and is directly used in, the process of manufacturing property subject to taxation under Oklahoma Sales Tax Code, Title 68, Article 13. The term "manufacturing plants" shall mean those establishments primarily engaged in manufacturing or processing operations, and generally recognized as such. . . .

The corresponding exemption in the sales tax code contains language identical to that of section 1404(d). Title 68 O.S.1981 and Supp.1988 § 1359(C), exempts machinery and equipment from sales tax which "is incorporated into, and is directly used in, the process of manufacturing property subject to taxation under this article." The term "manufacturing plants" is defined identically to subsection 1404(d).

In the instant case it is undisputed that crushed rock or ballast is "property subject to taxation" under the sales tax code. It is further undisputed that the crushing of rock is "manufacturing." *Tulsa Machinery Co. v. Oklahoma Tax Comm'n*, 208 Okl. 138, 253 P.2d 1067 (1953). This dispute concerns which machinery and equipment at McKee's facility "is incorporated into, and is directly used in, the process of manufacturing." Although the Commission found certain equipment and machinery exempt, it assessed tax on the equipment used to clean, sort, and transport the rock after it had been crushed.

In its order denying McKee's protest, the Commission found the following equipment was not exempt: "ferclars which feed the rock onto the conveyor belts, radial stackers and conveyor belts, which move the rock from one process to the next, and the equipment at the final screening plant which cleans the rocks and sorts it according to size specifications." The Commission thus determined that this particular equipment was not "an integral part of the process of manufacturing." Basically, the Commission held that the "process of manufacturing" ended once the rock was crushed, stating:

In this case, the form of the rock is changed when it is crushed. The Sales and Use Tax Division has removed from the assessment conveyors, feeders, etc. up to the second crusher. However, after the processing of changing the form of the rock is complete, transporting, storage and loading equipment used to arrange or to move the rock to a convenient location for its sale is not equipment used in the manufacturing process.

It is equipment which is used to prepare already manufactured materials for sale.

The Commission thus held that any further type of process applied to crushed rock in order to make railroad ballast does not constitute "manufacturing" under the manufacturer's exemption. On appeal, McKee argues that the Commission's decision is erroneous because it restricts the meaning of "manufacture" to a very limited and narrow process. McKee contends that this interpretation contravenes established explanations of "manufacture" as set by the Oklahoma Supreme Court. This court agrees.

In *Cain's Coffee Co. v. City of Muskogee*, 171 Okl. 635, 638, 44 P.2d 50, 52 (1935) (per curiam), the court looked to cases from other jurisdictions to define "manufacturing" and quoted the following from the Illinois Supreme Court:

"[T]he word 'manufacture' is not to be given its technical meaning. The Century Dictionary defines it as 'the production of articles for use from raw or prepared materials by giving these materials new forms, qualities, properties, or combinations, whether by hand labor or machine.'

"Whenever labor is bestowed upon an article which results in its assuming a new form, possessing new qualities or new combinations, the process of manufacturing has taken place...."

This definition was again cited by the court in *Oklahoma Tax Comm'n v. Oklahoma Coca–Cola Bottling Co.*, 494 P.2d 312, 317 (1972). The *Coca–Cola* case concerned the question of whether mechanical bottle washers were "an integral part of the manufacturing process." In holding that the bottle washers were a part of the manufacturing process, the court once again cited cases from other jurisdictions. The court noted that the final product was the aggregate result of all the machines in a fully automated plant. If any machine failed to operate, the function of manufacturing would cease and the proper preparation of the product could not occur, thus "[e]ach machine complements the others."

■ The *Coca–Cola* court further elaborated upon its concept of a manufacturing process by referring to *Zoller Brewing Co. v. State Tax Comm'n*, 232 Iowa 1104, 5 N.W.2d 643 (1942), where the court held that a brewing company was not required to pay a use tax on a mechanical case-packer used by the company in the sale and distribution of the beer it produced. Using *Zoller's* rationale even a "container" is exempt from tax when it becomes an integral part of the manufacturing process. Thus machines and equipment used at the end of the manufacturing process for packaging and delivery are necessary for the sale and distribution of the product. These machines are exempt from tax just as machines used directly in changing the actual form and structure of the product.

■ As McKee points out in its brief, the record is filled with explanations of the differences between simple crushed rock and railroad ballast. McKee subjects the crushed rock to a number of processes which both change the shape and form of the rock and give it certain qualities or properties which do not occur in the initial stages. These additional processes change the rock before it is marketable as railroad ballast. Certainly the railroad would not purchase crushed rock which had only gone through the initial stages of McKee's manufacturing process.

McKee's manufacturing facility is fully automated, as the plant in *Coca–Cola.* Similarly, if any of McKee's machines failed to operate, the proper production of railroad ballast would not occur. In this sense, the machines and equipment "complement" each other just as those in the bottling process.

We find that the ferclars, radial stackers and conveyor belts, and equipment used at the final screening plant which cleans and sorts the ballast are all "incorporated into" and "directly used in, the process of manufacturing" railroad ballast. The machinery and equipment falls within the manufacturer's exemption of the statutes. The Commission's order is reversed and the case is remanded to the Commission to enter an

order consistent with this opinion and the views expressed herein.

REIF, P.J., and RAPP, J. (sitting by designation), concur.