Dear Representative Walker
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. As used in the Oklahoma Statutes, does the term "production" of wine mean that fermentation must occur on the premises of the winery?
 2. Would importing wine from outside the state, but bottling the wine in this state, qualify as "production" at the winery?
 Fermentation
¶ 1 You first ask whether wine can only be considered to have been produced under the Oklahoma Statutes if the specific process of fermentation occurs on the premises of the licensed winery. Under Oklahoma law the meaning and intent of a statute is first sought in the language of the statute itself. City of Durant v.Cicio, 50 P.3d 218, 221 (Okla. 2002). Furthermore, the Legislature may always exercise its "prerogative to [expressly] define words or phrases appearing in legislative enactments."City of Tulsa v. State ex rel. Pub. Employees Relations Bd.,967 P.2d 1214, 1220 (Okla. 1998). Under the Oklahoma Alcoholic Beverage Control Act ("Oklahoma Act"), 37 O.S. 2001 Supp. 2004, §§ 501-599, the following terms relating to wine and wine making are expressly defined:
40. "Wine" means and includes any beverage containing more than one-half of one percent (1/2 of 1%) alcohol by volume and not more than twenty-four percent (24%) alcohol by volume at sixty (60) degrees Fahrenheit obtained by the fermentation of the natural contents of fruits, vegetables, honey, milk or other products containing sugar, whether or not other ingredients are added, and includes vermouth and sake, known as Japanese rice wine;
 41. "Winemaker" means any person who produces wine; and
 42. "Oklahoma winemaker" means a business premises in Oklahoma licensed pursuant to the Oklahoma Alcoholic Beverage Control Act wherein wine is produced by the licensee who must be a resident of the state. The wine product fermented in said licensed premises shall be of grapes, berries and other fruits and vegetables imported into this state and processed herein or shall be of grapes, berries and other fruits and vegetables grown in Oklahoma.
37 O.S. 2001, § 506[37-506] (emphasis added).[1] The Oklahoma Act contains no express definition of the terms "production," "produced" or "producer." See 37 O.S. 2001 Supp. 2004, §§ 501-599.
¶ 2 The definition of "wine" describes an alcoholic beverage obtained by the fermentation of products containing sugar and the possible addition of other ingredients, but does not state that those activities must occur on the premises of the winery. Id.
§ 506(40). In addition, the definition of "Oklahoma winemaker" states that when a wine product is fermented on licensed premises it must be of certain agricultural items either grown in or imported into Oklahoma, but does not expressly state that fermentation must occur on the winery premises. Id. § 506(42). Furthermore, the terms "production" or "produced" are not defined in either the Oklahoma Constitution or the administrative rules promulgated by the Alcoholic Beverage Laws Enforcement Commission ("Commission"), as set forth in the Oklahoma Administrative Code.See OAC 45:1-1-1-60-3-2. The Commission has authority to adopt administrative rules to carry out the purposes of the Oklahoma Act. 37 O.S. 2001, § 514[37-514](2).
¶ 3 In the absence of express definitions of the words used in a statute, the words must be given their plain and ordinary meaning. 25 O.S. 2001, § 1[25-1]; Cicio, 50 P.3d at 221. Accordingly, we look to the plain and ordinary meaning of the term "produce."Webster's New International Dictionary defines "produce," in pertinent part, as follows: "to give being, form, or shape to:make often from raw materials: MANUFACTURE." Id. at 1810 (3d ed. 1993). As with the term "produced," there is no definition of the term "manufacture" in the Oklahoma Act. The term "manufacturer" is defined, but provides no guidance on what activities constitute the manufacturing of wine: "`Manufacturer' means a brewer, distiller, winemaker, rectifier, or bottler of any alcoholic beverage[.]" 37 O.S. 2001, § 506[37-506](18).
¶ 4 Although not defined, the term "manufacture" is used in the provisions of the Oklahoma Act pertaining to wine along with the term "produced."
 A winemaker license shall authorize the holder thereof: To manufacture (including such mixing, blending and cellar treatment as authorized by federal law), bottle, package, and store on licensed premises wine containing not more than twenty-four percent (24%) alcohol by volume, provided the bottle or package sizes authorized shall be limited to the capacities approved by the United States Bureau of Alcohol, Tobacco and Firearms; to sell wine in this state to licensed wholesalers and manufacturers, provided, an Oklahoma winemaker may sell and ship wine produced at a winery in this state directly to retail package stores and restaurants in this state; to sell bottles of wine produced at the winery from grapes and other fruits and berries grown in this state, if available, to consumers on the premises of the winery; to serve visitors on the licensed premises free samples of wine produced on the premises; to serve free samples of wine produced at the winery at festivals and trade shows; to sell wine produced at the winery, in original sealed containers, at festivals and trade shows; to sell wine out of this state to qualified persons; to purchase from licensed winemakers, distillers and rectifiers in this state, and to import into this state wine, brandy and fruit spirits for use in manufacturing in accordance with federal laws and regulations.
2005 Okla. Sess. Laws ch. 1, § 40(C) (amending 37 O.S. Supp. 2004, § 521[37-521](C)) (emphasis added).[2]
¶ 5 The first activities authorized by a winemaker's license are those of manufacturing, bottling, packaging and storing wine on the licensed premises. Id. The winemaker's license also authorizes the holder to do several things with wine "produced" at the winery, such as selling to certain parties and serving samples at the winery and trade shows. Id. When used in the licensing provision the term "manufacture," which pursuant toWebster's New International Dictionary means the same thing as "produce" in its plain and ordinary usage (id. at 1810), the term is further defined by a short parenthetical phrase to include the more specific activities of mixing, blending and cellar treatment "as authorized by federal law." 2005 Okla. Sess. Laws ch. 1, § 40(C) (amending 37 O.S. Supp. 2004, § 521[37-521](C)). The terms "mixing," "blending" and "cellar treatment" are not defined in the Oklahoma Act or in rules promulgated by the Commission in the Oklahoma Administrative Code. See 37 O.S. 2001 Supp. 2004, §§ 501-599; OAC 45:1-1-1-60-3-2.
¶ 6 The federal law which authorizes the manufacture of wine is found in the Code of Federal Regulations, Title 27, Chapter 1. The federal regulations authorize many kinds of mixing, blending and treatment. See 27 C.F.R. §§ 4.22; 24.175-24.184. For example, the treatment of wine may be accomplished with filtering equipment, pasteurization and refrigeration among other processes. Id. § 4.22(b), (c). The federal regulations also authorize and govern the mixing of sweeteners, fruit juices and acids as well as the crushing and fermentation process. See id.
§§ 24.176-24.184. Some of the processes, such as amelioration (the addition of water or sugar to adjust the acid level) must occur on the premises of the winery, while others such as crushing and fermentation do not. See id. §§ 24.176(A), 24.178. Although the parenthetical language used in Section 521(C) of Title 37 does not mention the activities of crushing and fermentation, it is obvious they must also occur for wine to be produced. Therefore, the federal law referenced in the parenthetical phrase authorizes many different activities related to the production of wine.
¶ 7 You referenced the federal regulation 27 C.F.R. § 4.35 in your request letter.[3] Section 4.35(a)(2) governs labeling requirements and states, in pertinent part, as follows:
(iii) Produced or Made means that the named winery:
 (A) Fermented not less than 75% of such wine at the stated address, or
 (B) Changed the class or type of the wine by addition of alcohol, brandy, flavors, colors, or artificial carbonation at the stated address, or
 (C) Produced sparkling wine by secondary fermentation at the stated address.
Id.
¶ 8 However, nothing in the Oklahoma Act indicates that this definition, describing which terms can be used on a label, is what is meant when the term "produced" is used in the Oklahoma Act, for purposes of the things that can be done with wine produced at the winery. The federal regulations pertaining to the production of wine also provide a definition for "own
production." 27 C.F.R. § 24.10 (emphasis added). This definition states that when the term "own production" is used it refers to wine produced by fermentation at the winery. However, this definition would imply that when the term "production" is used without being preceded by the word "own," something different is meant. Therefore, while the federal regulations authorize many activities related to wine making, they do not provide a definitive answer to what the term "production" or "manufacture" means when used in the Oklahoma Act.
¶ 9 In addition, no Oklahoma case decisions could be found which discussed the interpretation of the term "produced" with regard to wine making. The meaning of the term "manufacture" has been addressed by the Oklahoma Supreme Court in the context of taxation in McDonald's Corp. v. Oklahoma Tax Commission,563 P.2d 635 (Okla. 1977).
 "[T]he word `manufacture' is not to be given its technical meaning. The Century Dictionary defines it as `the production of articles for use from raw or prepared materials by giving these materials new forms, qualities, properties or combinations, whether by hand labor or machine.' `Whenever labor is bestowed upon an article which results in its assuming a new form, possessing new qualities or new combinations, the process of manufacturing has taken place, whether the thing produced be a small article of commerce or a structure, such as a house, road, or bridge.'"
Id. at 637 (quoting Okla. Tax Comm'n v. Okla. Coca-ColaBottling Co., 494 P.2d 312, 317 (Okla. 1972)).
¶ 10 Aside from defining "manufacture" in the context of sales tax exemptions for manufacturing equipment, the language also indicates the Oklahoma Supreme Court considers the terms "manufacture" and "produce" to be interchangeable. InMcDonald's, the fast-food corporation was appealing an Oklahoma Tax Commission order denying McDonald's claim that its restaurants were engaged in manufacturing and therefore entitled to a sales tax exemption on various items of equipment used therein. Id. at 636. In ruling against McDonald's, the Oklahoma Supreme Court held that the "preparation of food for immediate retail sale [at the restaurant] is not manufacturing." Id. at 641. Under McDonald's definition, manufacturing has taken place when labor is applied to an article and something new evolves, either in form, qualities or combinations. Id. at 637. Further, both raw and prepared materials may be involved in the process.Id.
¶ 11 Applying this definition to wine making, the production or manufacturing of wine has taken place when some material, either raw or prepared, has been given new properties or qualities through the application of labor. Therefore, production of wine may include the fermentation process, which certainly gives the fruit and its juice a new quality. However, the production of wine may also result from taking an already fermented material and changing its qualities through the processes of mixing, blending and cellar treatment. Accordingly, when the terms "produced" or "manufactured" at the winery are used in the Oklahoma Act, it does not mean that fermentation or any other specific process must occur at the winery, but that some authorized process occurs which changes the properties and qualities of the wine.
 Bottling
¶ 12 You next ask, in effect, whether the mere activity of bottling wine at a winery means that "production" of wine at the winery has occurred under the Oklahoma Act. As set forth above, the activity of bottling the wine is listed separately from the activity of manufacturing, which means the same as producing. 2005 Okla. Sess. Laws ch. 1, § 40(C) (amending 37 O.S. Supp. 2004, § 521[37-521](C)). While "manufacturer" is defined in Section 506(18) to include a "bottler of any alcoholic beverage" in the general definitions of the Oklahoma Act, the specific provisions pertaining to wine making list manufacturing and bottling as separate activities. 2005 Okla. Sess. Laws ch. 1, § 40(C) (amending 37 O.S. Supp. 2004, § 521[37-521](C)).
¶ 13 Under Oklahoma law, specific statutory language controls over general statutory language. Duncan v. Okla. Dep't ofCorr., 95 P.3d 1076, 1079 (Okla. 2004). Furthermore, this is consistent with the definition of production, as the mere act of bottling wine does not itself change the properties or qualities of the wine. Therefore, the mere act of bottling wine without performing some process of production would not qualify as "production" of wine as that term is used in the provisions of the Oklahoma Act pertaining to wine making.
¶ 14 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The term "production" of wine as used in the Oklahoma Statutes does not mean that the process of fermentation of the wine must occur on the premises of the winery. Rather, production of wine for purposes of Section 521(C) of Title 37 takes place when an application of labor such as mixing, blending or filtration of either raw or prepared wine materials results in a change of qualities or properties of those materials.
 2. The mere act of bottling wine in this State without performing some production process that gives the wine new qualities or properties does not qualify as "production" at the winery for purposes of Section 521(C) of Title 37.
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 RICHARD D. OLDERBAK Assistant Attorney General
[1] Title 37 O.S. 2001, § 506[37-506] was amended in the First Regular Session of the Fiftieth Legislature with an effective date of November 1, 2005. See 2005 Okla. Sess. Laws ch. 173, § 1.
[2] Title 37 O.S. Supp. 2004, § 521[37-521] was amended twice more in the First Regular Session of the Fiftieth Legislature, with both amendments having an effective date of November 1, 2005. See
2005 Okla. Sess. Laws ch. 67, § 1; 2005 Okla. Sess. Laws ch. 173, § 2.
[3] Letter from Purcy Walker, Oklahoma State Representative, to W.A. Drew Edmondson, Attorney General of Oklahoma (Mar. 31, 2005) (on file with author).